Nos. 15-1410, -1561, 16-1055

# United States Court of Appeals
# for the Federal Circuit

UNIVERSAL ELECTRONICS, INC.,
*Plaintiff -Appellee*,

*v.*

UNIVERSAL REMOTE CONTROL, INC.,
*Defendant-Appellant*.

**Appeals from the United States District Court for the Central District of California in Case No. 8:12-CV-00329, Judge Andrew J. Guilford**

**BRIEF FOR PLAINTIFF-APPELLEE UNIVERSAL ELECTRONICS, INC.**

David B. Cochran
Thomas R. Goots
Sheryl H. Love
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
dcochran@jonesday.com
trgootsjonesday.com
shlove@jonesday.com

Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
(202) 879-3939
gcastanias@jonesday.com

Mark A. Finkelstein
Jaclyn B. Stahl
JONES DAY
3161 Michelson Drive, #800
Irvine, CA 92612
(949) 851-3939
mafinkelstein@jonesday.com
jstahl@jonesday.com

*Attorneys for Plaintiff-Appellee Universal Electronics, Inc.*

# CERTIFICATE OF INTEREST

Counsel for plaintiff-appellee hereby certifies as follows:

1.  The full name of every party represented by me in this case is:

    Universal Electronics, Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Jones Day:  Gregory A. Castanias, Mark A. Finkelstein, David B. Cochran, Theodore M. Grossman, Thomas R. Goots, Sheryl H. Love, Jaclyn B. Stahl, William C. Rooklidge (*no longer with Firm*).

    Davis Wright Tremaine LLP:  Anna R. Buono, Martin L. Fineman, Nicolas A. Jampol.

    Niro, Scavone, Haller and Niro Ltd. (now known as Niro, Haller & Niro Ltd.):  Laura A. Kenneally, Raymond P. Niro, Sr., Ashley E. LaValley (*no longer with Firm*), Brian E. Haan (*no longer with Firm*), Christopher J. Lee (*no longer with Firm*), David J. Sheikh (*no longer with Firm*), Fredrick C. Laney (*no longer with Firm*).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................................i

STATEMENT OF RELATED CASES ...................................................ix

COUNTER-STATEMENT OF ISSUES ................................................1

STATEMENT OF THE CASE .................................................................2

    A.    Introductory Statement ...........................................................2

    B.    The Pre-Trial Motion Practice And The Jury's Verdict Rejected All Of UEI's Claims Of Infringement ...................................3

    C.    The District Court Found That The Jury's Verdicts On URC's Four Equitable Defenses Were Advisory Only, And Independently Found Laches, But Not The Other Three Defenses ........................................................................4

    D.    The District Court's Orders Finding Portions Of The Case Exceptional And Awarding URC Its Reasonable Attorneys' Fees and Costs For Those Portions .......................................7

        1.    The district court's order finding portions of this case exceptional ...........................................................8

        2.    The district court's order awarding fees and costs .................10

SUMMARY OF ARGUMENT ..............................................................11

STANDARD OF REVIEW ....................................................................14

ARGUMENT ..........................................................................................15

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY RULING THAT CERTAIN ASPECTS OF THE CASE WERE NOT EXCEPTIONAL. ..........................................................................15

II.    THE DISTRICT COURT PROPERLY INVOKED RULE 39(C)(1), AND THE EQUITABLE ISSUES WERE TRIED BY THE COURT WITH THE ASSISTANCE OF AN ADVISORY JURY. ...........................19

    A.    The District Court Never Consented to a Binding Jury on the Equitable Issues. ...............................................................21

    B.    URC Cannot Now Choose the More Favorable Ruling After the Fact. .............................................................................23

# TABLE OF CONTENTS
### (continued)

**Page**

C.    The Pretrial Order Did Not Command a Jury Trial on All Issues. ....................................................................................... 24

D.    UEI Did Not Consent to a Binding Jury on the Equitable Issues. ..... 28

E.    URC Has Not Shown Prejudice. ....................................... 36

III.    THE DISTRICT COURT DID NOT VIOLATE THE SEVENTH AMENDMENT. .......................................................................... 39

CONCLUSION ................................................................................ 45

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Advanced Software Design Corp. v. Fiserve, Inc.*,
641 F.3d 1368 (Fed. Cir. 2011) .............................................................15, 26, 27

*Agfa Corp. v. Crea Products Inc.*,
451 F.3d 1366 (Fed. Cir. 2006) .......................................................14, 40, 41, 42

*Alexander v. Gerhardt Enters., Inc.*,
40 F.3d 187 (7th Cir. 1994) ................................................................................37

*Amtrust Inc. v. Larson*,
388 F.3d 594 (8th Cir. 2004) .......................................................13, 15, 20, 36

*Bereda v. Pickering Creek Indus. Park, Inc.*,
865 F.2d 49 (3d Cir. 1989) .................................................................................31

*Broadnax v. City of New Haven*,
415 F.3d 265 (2d Cir 2005) ...............................................................................30

*Cabinet Vision v. Cabnetware*,
129 F.3d 595 (Fed. Cir. 1997) ...........................................................................15

*Commonwealth Capital Corp. v. City of Tempe*,
No. 2:09-CV-00274 JWS, 2011 WL 3759475 (D. Ariz. Aug. 25,
2011) .....................................................................................................................33

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962)............................................................................................39

*Davis v. United States*,
No. CIV. 07-00461ACK-LEK, 2009 WL 1455976 (D. Haw. May
26, 2009) ..............................................................................................................32

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
  818 F. Supp. 2d 1193 (E.D. Cal. 2011) ............................................................26

*Duro-Last, Inc. v. Custom Seal, Inc.*,
  321 F.3d 1098 (Fed. Cir. 2003) ...............................................................15, 44

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*,
  215 F.3d 182 (1st Cir. 2000) ...................................................................13, 36

*Firemen's Ins. Co. of Newark, N. J. v. Smith*,
  180 F.2d 371 (8th Cir. 1950) ...................................................................13, 24

*Fuller v. City of Oakland*,
  47 F.3d 1522 (9th Cir. 1995) ...................................................................22, 23

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) ...................................................................passim

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996) ...................................................................passim

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014)...................................................................1, 12, 14, 16

*Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*,
  195 F.3d 368 (8th Cir. 1999) ...................................................................13, 36

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.2d 1342 (Fed. Cir. 2012) ...................................................................33, 41

*Kramer v. Banc of Am. Securities, LLC*,
  355 F.3d 961 (7th Cir. 2004) ...........................................................13, 21, 23, 31

*Kyei v. Oregon Dep't of Transp.*,
  497 F. App'x 711 (9th Cir. 2012)...................................................................14, 20

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  719 F.3d 1367 (Fed. Cir. 2013) ...................................................................33

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
No. C 07-03752 JSW, 2009 WL 1561432 (N.D. Cal. June 1, 2009) .................33

*Los Angeles Police Protective League v. Gates*,
995 F.2d 1469 (9th Cir. 1993) .......................................................................43

*Lumen View Tech. LLC v. FindTheBest.com, Inc.*,
No. 15-1275, __ F.3d __, slip op. (Fed. Cir. Jan. 22, 2016) ........................14, 16

*Merex A.G. v. Fairchild Weston Systems, Inc.*,
29 F.3d 821 (2d Cir. 1994) ......................................................................passim

*Modine Mfg. Co. v. Allen Group, Inc.*,
917 F.2d 538 (Fed. Cir. 1990) ...................................................................29, 30

*Nester-Osborne v. Albertson's, Inc.*,
212 F. App'x 616 (9th Cir. 2006) .................................................................32

*OCI Wyoming, L.P. v. PacifiCorp*,
479 F.3d 1199 (10th Cir. 2007) ................................................................13, 23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014)............................................................................passim

*Oplus Technologies, Ltd. v. Vizio, Inc.*,
782 F.3d 1371 (Fed. Cir. 2015) .....................................................................19

*Perkin-Elmer Corp. v. Computervision Corp.*,
732 F.2d 888 (Fed. Cir. 1984) ......................................................................41

*Pradier v. Elespuru*,
641 F.2d 808 (9th Cir. 1981) ...................................................................31, 32

*SFA Systems, LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015) .........................................................11, 17, 18

*Site Update Sols., LLC v. CBS Corp.*,
No. 2015-1448, slip op. (Feb. 1, 2016) (unpublished) .....................................17

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
  44 F.3d 988 (Fed. Cir. 1995) ...................................................42, 43

*Thompson v. Parkes*,
  963 F.2d 885 (6th Cir. 1992) ...........................................................31

*Traxler v. Multnomah Cnty.*,
  596 F.3d 1007 (9th Cir. 2010) ...................................................14, 20

*United States v. Parker*,
  No. 3:07-CV-01969-H-JLB, 2015 WL 1745879 (S.D. Cal. Feb. 17,
  2015) ...............................................................................................32

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
  No. 13-0984 (C.D. Cal. filed June 28, 2013).....................................ix

*Walker v. West Coast Fast Freight, Inc.*,
  233 F.2d 939 (9th Cir. 1956) ...........................................................27

*Wilson v. Muckala*,
  303 F.3d 1207 (10th Cir. 2002) .......................................................27

## STATUTES

35 U.S.C. § 285...................................................................passim

## OTHER AUTHORITIES

Fed. Cir. R. 36 .......................................................................3

Fed. R. Civ. P. 38 ...........................................................22, 23

Fed. R. Civ. P. 39 ...............................................................passim

Fed. R. Civ. P. 50 ....................................................................32

Fed. R. Civ. P. 51 ...........................................................29, 30

Fed. R. Civ. P. 52 ....................................................................32

U.S. Const. art. VII ..........................................................................passim

## <u>STATEMENT OF RELATED CASES</u>

There are no other appeals in or from the same civil action or proceeding in the lower court before this or any other appellate court.  Counsel is unaware of any other cases, in this or any other court, that would be directly affected by this Court's decision in this appeal.

There is another case pending involving the same parties, *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. 13-0984 (C.D. Cal. filed June 28, 2013), which is currently stayed pending *Inter Partes Review*.  *Id.* at Dkt. Nos. 88, 104.

## COUNTER-STATEMENT OF ISSUES

In this appeal from the district court's award of $4.6 million in attorneys' fees, Defendant-Appellant Universal Remote Control (URC) appeals certain of the district court's procedural rulings, none of which would, if reversed, alter the underlying take-nothing judgment, in an effort to obtain even more fees. URC's appeal therefore presents this Court with the following issues:

1.    Whether the district court, in awarding URC $4.6 million in attorneys' fees, permissibly exercised its broad discretion under *Highmark Inc. v. Allcare Health Management System, Inc.*, 134 S. Ct. 174 (2014), by carefully delineating between aspects of the case that were and were not "exceptional," and by apportioning URC's fee award accordingly?

2.    Whether the district court properly tried URC's equitable defenses with the advice of the jury, consistent with Federal Rule of Civil Procedure 39(c)(1) and the Seventh Amendment?

3.    Whether, even if the jury's verdicts on the equitable defenses were regarded as binding rather than advisory, such a holding would alter the district court's findings and discretionary judgment that the strength of, and manner of litigating, UEI's case with respect to the '367 and '906 patents did not render those aspects of the case exceptional so as to warrant fee-shifting?

# STATEMENT OF THE CASE

### A.    Introductory Statement

Make no mistake about it—this appeal is about attorneys' fees, and nothing more.  None of the procedural and equitable issues that take up the lion's share of URC's brief could alter the district court's judgment in any way—UEI already lost every single one of the claims for which URC interposed the four equitable defenses that it now says the jury should have decided authoritatively, rather than in an advisory capacity.  URC simply seeks more money—$9.2 million in attorneys' fees rather than the $4.6 million awarded (*see* A29562)—by attempting to re-litigate these issues on appeal.

Aspects of this case, as litigated by UEI, have been found "exceptional" under the statute, and URC was thereby awarded almost $5 million of its attorneys' fees.  UEI has accepted that penalty, and does not appeal it, nor does UEI appeal the underlying losses on its four claims of patent infringement.  But enough is enough.  URC cannot credibly argue that the district court abused its discretion by ruling that some aspects of this case were not exceptional and ordering URC to apportion its fee request accordingly.  Nor can URC credibly claim—particularly in view of the district court's own findings and conclusions that URC's equitable defenses of equitable estoppel, patent misuse, and unclean hands failed—that the district court would have found even more aspects of the case to be "exceptional"

had the jury's advisory verdicts on those defenses instead been treated as binding. In any event, the court was correct to treat those verdicts as advisory rather than binding.

The $4.6 million already awarded to URC is sufficient to serve all of the goals of § 285. This appeal, which should not have been brought, now serves as a cautionary tale of overreaching. The district court's discretionary judgment should be affirmed, and, with respect, we suggest summarily so. *See* Fed. Cir. R. 36.

### B.    The Pre-Trial Motion Practice And The Jury's Verdict Rejected All Of UEI's Claims Of Infringement

UEI asserted four patents against URC—the '067 Patent, the '426 Patent, the '367 Patent, and the '906 Patent. *See* A22. The district court invalidated the '367 Patent in its February 2013 claim-construction order, *see* A23, and, in a February 2014 summary judgment order, held that the '426 Patent was not infringed and that no damages were available for infringement of the '067 Patent (whose claims were later held unpatentable by the PTAB, *see id.*) because of UEI's failure to mark. *See id.*

The case proceeded to trial in May 2014 on (i) the validity of the '426 Patent, (ii) infringement and validity of the '906 Patent, and (iii) a variety of URC's defenses. *Id.* The jury was given instructions and a verdict form asking it to render verdicts on all of URC's defenses, both legal and equitable. A33366-33413, A24520-25. The jury's verdict went across-the-board for URC on all

- 3 -

issues, including (i) invalidity of the '426 Patent; (ii) noninfringement and invalidity (anticipation and obviousness) of the '906 Patent, and (iii) URC's equitable defenses of laches, equitable estoppel, patent misuse, and unclean hands. A24520-25.  The first three of these equitable defenses went only to the '426 Patent (A12, A14, A16), which had already been held noninfringed (by the court on summary judgment) and invalid (by the jury).  The fourth of URC's defenses, unclean hands, went to all four of UEI's infringement claims.  A18.

### C.  The District Court Found That The Jury's Verdicts On URC's Four Equitable Defenses Were Advisory Only, And Independently Found Laches, But Not The Other Three Defenses

In a lengthy (20 single-spaced pages) and carefully considered order of December 16, 2014, the district court held that the jury's verdict regarding the equitable issues was advisory under Federal Rule of Civil Procedure 39(c)(1), and issued a set of findings and conclusions upholding URC's laches defense, but rejecting its remaining three equitable defenses.

At the outset, the court noted that there was a dispute between the parties as to whether these defenses "were submitted to the jury for final decision or an advisory verdict."  A3.  The court emphatically held that the jury's verdicts on these equitable issues were advisory only:  "The Court heard the trial and knows what happened.  Throughout the trial, numerous references were made concerning the Court being a 'partial trier of fact,' and the Court itself made this exact

statement.  No objection was made, and this was the common understanding.  The jury's verdict on the equitable issues was advisory."  A3.

The record demonstrates this at every turn:

- Both parties requested a trial by jury "on all issues so triable."  A2013 (the Complaint); A2033 (URC's Answer); A2047 (URC's Counterclaim).

- In the proposed final pretrial order, URC invited the district court to seek an advisory jury *after* the evidence of unclean hands was presented.  A21847.

- UEI objected to the equitable issues being presented to the jury in its memorandum of contentions of fact and law, which was also incorporated by reference into the proposed final pretrial order.  A18461-62; A21838.

- UEI requested bifurcation in the proposed final pretrial order and at the April 21, 2014 hearing regarding the motion for bifurcation.  A21845-47 ("Significantly, neither URC's patent misuse defense nor its purported unclean hands defense . . . which sound in equity, are jury issues."); A31473-74 ("We believe there are issues that relate solely to equitable issues in the case.  Those issues ought to be heard by Your Honor to really expedite the process and to avoid any confusion by the jury and any prejudice.").

- The district court referenced itself (the judge, rather than the jury) as the trier of fact during trial.  A31878-80, A31885-88, A31889.

- The district court stated at the end of trial that the jury's verdict on the equitable issues was advisory, and URC did not object at that time.  A33529-30.

- After trial, this issue was not raised by URC until it responded to UEI's brief regarding the equitable issues.  URC did not raise the issue in the stipulation regarding briefing on the equitable issues.  A24877-79.

- At the hearing on the equitable issues after trial, UEI's counsel stated on the record that he always thought the court was deciding the equitable issues.  A33562.

- At the hearing on the equitable issues after trial, URC's counsel was evasive when asked by the district court if URC believed during the course of trial that the equitable issues were being tried by a binding jury.   A33551-53, A33562-63; *see* pp. 37-38, below.

In its December 16, 2014 order, the district court issued findings of fact and conclusions of law addressing the four equitable defenses raised by URC—laches, equitable estoppel, patent misuse, and unclean hands.

As to **laches**, the district court came to the same conclusion as did the advisory jury and held that laches barred enforcement of the '426 Patent:  "The best the Court can say is that Plaintiff [UEI] did not rebut the presumption of material prejudice."  A14.

As to **equitable estoppel**, which also went to the '426 Patent alone, the court held that "equitable estoppel does not prevent the assertion of the '426 Patent." A16.  This was because, the court found, URC had failed to prove an essential element of that defense—reliance.  A15-16.

As to **patent misuse**, which similarly went only to the '426 Patent, the court held that UEI's "assertion of the '426 Patent is not barred by patent misuse," A18, because URC had failed to prove bad faith, that UEI "believed that it was asserting patents that were invalid, non-infringed, or unenforceable," that UEI had not accused URC's MX-500 product of infringement in a prior case (therefore there

was no *res judicata*), and that URC "did not establish that [UEI] knew that the

patent was invalid, and so has not established that its assertion of the patent was in

bad faith on that ground." A17. The district court further bolstered its conclusion

regarding patent misuse by discussing the prior litigation between the parties, facts

relevant to the inventorship issue, and UEI's motive for bringing suit. A9-12.

Finally, as to **unclean hands**, the only defense that applied to all four of

UEI's patent-infringement claims, the court held that UEI's infringement "claims

are not barred by unclean hands," A19, because URC had failed to "establish that

[UEI] acted deceitfully or unfairly," A18, and that a single questionable incident

(briefly accusing a URC product of infringement before withdrawing that

accusation three months later), "taken together with the entire course of litigation

and the other grounds urged by [URC], does not show unclean hands." A19.

### D. The District Court's Orders Finding Portions Of The Case Exceptional And Awarding URC Its Reasonable Attorneys' Fees and Costs For Those Portions

The district court in this case issued two lengthy, careful orders with respect

to URC's claim for attorneys' fees and costs under 35 U.S.C. § 285—one (A21-36)

finding that certain aspects of the substantive strength and litigation conduct of

UEI's case made the case "exceptional" within the meaning of the statute and

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), and a

second order (A74-90) conducting both a "global" (*see* A75-78) and "a more

granular analysis" of the fees requested (A78; *see* A78-90). In combination, these orders found that adequate "compensation and deterrence" (*Octane Fitness*, 134 S. Ct. at 1756 n.6) would be served "by requiring [UEI] to pay for the portions of the case attributable to the '426 and '067 Patents, and the motion for reconsideration regarding the '367 Patent." A35.

### 1. The district court's order finding portions of this case exceptional

In its March 10, 2015 order, the district court granted URC's motion for attorneys' fees with the amount to be determined after additional briefing. A36. The district court made a detailed, claim-by-claim analysis that considered the record as a whole, including UEI's litigation positions, its manner of litigating, and its motives for bringing suit against URC. A25-35. Its order was thorough, well-reasoned, and supported by numerous citations to the record. A21-26.

The district court found that the case was exceptional with respect to the **'067 Patent** because of UEI's failure to mark and the pre-suit expiration of the patent, which precluded post-suit remedies. A25-27.

With respect to the **'426 Patent**, the court found the case was exceptional given the 20-year delay in correcting the inventorship, the delay in filing suit, and UEI's litigation conduct with respect to the '426 Patent. A27-31.

In contrast, the district court found that UEI's arguments regarding the **'367 Patent** were not "exceptional as to the '367 Patent," because UEI "presented a

colorable argument and cited valid case law in support." A32. It noted that "[a]n isolated unsuccessful motion for reconsideration would not render a case exceptional, but here, it adds somewhat to the pile," and "contributes a very small amount to a finding of exceptionality." A33.

Finally, the district court stated that with respect to the **'906 Patent**, "although the jury found that Plaintiff did not prove infringement of the '906 Patent, losing on that question is not an exceptional event." A33. UEI "presented evidence of infringement sufficient to survive summary judgment." A33. It also cited to evidence UEI presented at trial and explained that "it is not unusual for a prior art-based invalidity defense to prevail." A33. The court thus concluded that "the strength of [UEI's] case and manner of litigating as to the '906 Patent do not contribute to a finding of exceptionality." A33.

The court explained that it would consider the fact that the case was "over-litigated" by both sides when reviewing the request for fees. A34. The district court noted that there likely would have been a trial on the '906 Patent regardless of the other claims asserted. A35. It concluded that "compensation will be adequately served by requiring [UEI] to pay for the portions of the case attributable to the '426 and '067 Patents, and the motion for reconsideration regarding the '367 Patent. This will also serve as adequate deterrence. Requiring [UEI] to pay [URC]'s fees for portions of the case that were not exceptional has the potential to

over-deter meritorious claims, with implications for access to justice." A35. Accordingly, the court ordered URC to apportion its fee request consistent with the court's order. A35.

## 2.    The district court's order awarding fees and costs

In its September 4, 2015 order, the district court provided a well-reasoned and thorough explanation of its award of $4,623,389.68 in attorneys' fees and costs. A74-90. URC requested approximately $4.6 million in attorneys' fees alone. A89. The district court noted that this amount "reflect[s] the inefficiency of too many lawyers and not enough focus." A77. The court applied a 10% discount to the fees "[i]n light of the circumstances and [its] superior understanding of the litigation." A77. It also provided a more granular analysis of its fee apportionment. A78. For example, the court reduced the billing rate for a Sidley patent agent from $693.91 per hour to $323 per hour for an overall reduction in the fee award of $92,537.01. A81-82. Citing inefficiency, it reduced the hours billed, specifically excluding the hours billed by attorneys who spent less than 100 hours on the case, and applied a 10% reduction for fees incurred after November 27, 2013 for an overall reduction in the fee award of $116,341.50 and $307,615.41 respectively. A82-84.

The district court rejected UEI's arguments that there should be a further reduction in fees for block billing. A84-85. It declined to award URC its expert-

witness fees, reducing the expenses by $342,958.27. A86-87. And the court applied a 10% discount to expenses incurred after November 27, 2013 due to overstaffing, for a reduction of $39,411.17. A87-88. The district court declined to include URC's untimely fee submissions. A88-89. It concluded that UEI should pay $4,144,847.62 in fees and $478,542.06 in costs. A78.

## SUMMARY OF ARGUMENT

The district court properly exercised its discretion when it decided that certain aspects of the case were not exceptional and ordered URC to apportion its request for attorneys' fees and costs. URC now seeks a second bite at the apple on the issue of fees by attacking the district court's treatment of the jury's verdict as advisory with respect to the equitable issues. But this Court is not required to review the underlying issues; rather, it is only required to determine whether the district court abused its discretion when it ruled that certain aspects of the case were not exceptional. *See SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)).

The district court was aware of the jury's advisory verdicts on the equitable issues when it made the exceptionality and fees determinations. But the court found URC's case on three of these defenses to be deficient, and it exercised its discretion accordingly. And the district court was in a better position to do so

- 11 -

because it "live[d] with the case over a prolonged period of time" and was more familiar with the issues at hand. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748-49 (2014). URC's arguments regarding the jury issues seek to avoid the well-established standard of review for § 285 awards in order to obtain a higher fee award that the district court considered and rejected. Given the deferential standard of review, this Court should affirm the district court's orders regarding attorneys' fees.

The Court should not need to reach the remainder of the issues in URC's opening brief. Even if the district court had been wrong in treating the jury's equitable verdicts as advisory only, there is no indication that the district court's discretionary exceptional-case findings and its careful global and granular fee analyses would have been any different—they would have provided additional bases for UEI's losses on its four infringement claims, but would not establish that any more of the case was "exceptional" and eligible for fee-shifting. Indeed, the district court's independent disagreement with three of the four equitable verdicts is a powerful indicator that, even were the verdicts viewed as binding, the district court's factual findings regarding the strength of UEI's positions and its litigation conduct would be no different.

In any event, the district court was well within its discretion, and did not violate the Seventh Amendment, in treating the jury as advisory with respect to

these verdicts. The record shows that the district court never consented to a binding jury on the equitable issues. *See* Fed. R. Civ. P. 39(c)(1); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 968 n.2 (7th Cir. 2004); *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994). URC was never *entitled* to a binding jury verdict on these equitable issues. *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996). It never moved for a binding jury under Rule 39(c)(2). URC did not object to the district court deciding the equitable issues with an advisory jury and cannot now object. *See OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d 1199, 1203 (10th Cir. 2007); *Firemen's Ins. Co. of Newark, N. J. v. Smith*, 180 F.2d 371, 375 (8th Cir. 1950).

Furthermore, UEI never consented to a binding jury on the equitable issues. UEI's jury demand was limited to "all issues so triable," it objected to the equitable issues being presented to the jury in its memorandum of contentions of fact and law, it objected again by reference in the proposed final pretrial order, and it requested bifurcation. A2013, A18461-62, A21838, A21845-47, A31473-74. And URC has not shown any prejudice arising from the district court's decision to consult an advisory jury. *Merex*, 29 F.3d at 827; *see also Amtrust Inc. v. Larson*, 388 F.3d 594, 598 (8th Cir. 2004); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 215 F.3d 182, 188 (1st Cir. 2000); *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 375 (8th Cir. 1999).

- 13 -

Finally, the district court did not violate the Seventh Amendment by making separate findings on the equitable defenses. The legal issue of improper inventorship and the equitable issues of patent misuse and unclean hands are not common issues. *See Agfa Corp. v. Crea Products Inc.*, 451 F.3d 1366, 1372-73 (Fed. Cir. 2006); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987). The district court's findings of fact on the equitable issues were independent of and in accord with the jury's findings of fact with respect to the legal issues.

## STANDARD OF REVIEW

This Court "review[s] all aspects of a district court's § 285 determination for an abuse of discretion." *Lumen View Tech. LLC v. FindTheBest.com, Inc.*, No. 15-1275, __ F.3d __, slip op. at 4 (Fed. Cir. Jan. 22, 2016) (citing *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014)). "The statute imposes 'one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: [t]he power is reserved for 'exceptional' cases.'" *Id.* (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014)).

"[T]he district court's decision to consult an advisory jury" is also reviewed for abuse of discretion. *Kyei v. Oregon Dep't of Transp.*, 497 F. App'x 711, 713 (9th Cir. 2012) (citing Fed. R. Civ. P. 39(c) and *Traxler v. Multnomah Cnty.*, 596

F.3d 1007, 1013 (9th Cir. 2010)); *see also Amtrust Inc. v. Larson*, 388 F.3d 594, 598 (8th Cir. 2004).  Where the jury is advisory, this Court "review[s] the district court's fact findings for clear error and the ultimate determination of [the issues] for abuse of discretion." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003) (citation omitted).  A district court's decision to forego a jury determination of factual issues common to legal and equitable claims is reviewed for abuse of discretion.  *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997).  Similarly, a district court's interpretation of its own orders is reviewed for abuse of discretion.  *Advanced Software Design Corp. v. Fiserve, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011).

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY RULING THAT CERTAIN ASPECTS OF THE CASE WERE NOT EXCEPTIONAL.

The only relevant question to determining if URC is entitled to the relief it seeks in this appeal is whether the district court abused its discretion when it ruled that certain aspects of the case were not exceptional.  The answer to that question is "no."

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "The Patent Act does not define

'exceptional,' so [courts] construe it in accordance with its ordinary meaning."

*Octane Fitness*, 134 S. Ct. at 1756 (internal quotation marks and citation omitted).

> [A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.*; *see also Lumen View*, slip op. at 4-5.

The Supreme Court in *Highmark* acknowledged that "the district court is better positioned to decide whether a case is exceptional because it lives with the case over a prolonged period of time." 134 S. Ct. at 1748 (internal quotation marks and citations omitted). Furthermore, it explained that abuse of discretion is the correct standard of review in § 285 appeals, because "the question is multifarious and novel, [which means it is] not susceptible to useful generalization of the sort that *de novo* review provides." *Id.* at 1748-49 (internal quotation marks and citation omitted). Thus, even though "questions of law may in some cases be relevant to the § 285 inquiry," appellate courts "should apply an abuse-of-discretion standard in reviewing all aspects of a district court's § 285 determination." *Id.* at 1749.

Importantly, "*all aspects* of a district court's § 285 determination" are reviewed "for an abuse of discretion." *Lumen View*, slip op. at 4 (emphasis added).

This in turn means that this Court need not "evaluate and determine all issues of law decided by the district court de novo as part of [its] review of the district court's exceptional case determination." *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015).  Indeed, in *SFA Systems*, this Court rejected a similar attempt by a prevailing defendant to relitigate on appeal—strictly for purposes of appealing a denied § 285 motion—certain underlying issues of claim construction and indefiniteness, and claiming a right to *de novo* review.  *Id.* at 1347-48.  This Court in *SFA Systems* limited its inquiry—as it should here—to "the district court's evaluation of the strength of [appellee's] litigating position, not . . . the correctness of the district court's [underlying] orders" on the merits issues.  *Id.* at 1349.

As the Court said in *SFA Systems*:  "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position."  793 F.3d at 1348 (citing *Octane Fitness*, 134 S. Ct. at 1756) (emphases in original).  *See also Site Update Sols., LLC v. CBS Corp.*, No. 15-1448, slip op. at 5 (Fed. Cir. Feb. 1, 2016) (unpublished) ("[L]osing a case does not make it exceptional.").  This principle dooms URC's appeal.  As URC admits in its brief, it is appealing the district court's advisory-jury and equitable determinations not because rulings on those issues would have any effect on the

underlying verdict—they would not; UEI has already lost all of its infringement claims, and its asserted patent claims have either expired or been ruled invalid—but simply to stake a claim to attorneys' fees for the parts of the case not found to be exceptional or fitting of a fee award:  URC requests that "the order partially denying attorneys' fees . . . be vacated in part to the extent fees were not awarded for the apportioned aspects of the case."  URC's Opening Brief at 60-61 ("Op. Br.").

Even if the district court had been incorrect in treating the jury as advisory only on these issues—and it was not, *see* Section II, below—that would not in any way alter the "substantive strength" of UEI's "litigating position"; it would just alter the result on those defenses.  Indeed, the district court found in UEI's favor on three of these four defenses because URC—which bore the burden of proof on these defenses—failed to establish essential elements of those defenses; that is a powerful indicator that UEI's litigating position was substantively strong.  Even if the jury's advisory verdicts were treated as binding, that only goes to the "correctness or eventual success" (in the words of this Court in *SFA Systems*) of *URC's defenses*; it would not alter the court's discretionary judgment that UEI's litigating positions and litigation conduct as to those patents were reasonable and not befitting of a fee award under § 285.

In sum:  The district court took into account the substantive strength of

UEI's litigation position and the manner in which UEI litigated the case as required

by *Octane Fitness*.  It did not abuse its discretion when it ruled that certain aspects

of the case were not exceptional and ordered URC to apportion its attorneys' fees

request accordingly.  And nothing contained in URC's challenge to the *correctness*

of the district court's equitable rulings would alter the district court's thorough and

thoughtful determinations that UEI's case against those defenses was *substantively*

*strong and litigated fairly.  Cf. Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d

1371 (Fed. Cir. 2015) (vacating and remanding for the district court to "articulate

the reasons for its fee decision" where the district court found that the case was

exceptional and that there was misconduct, yet awarded no fees).

## II.    THE DISTRICT COURT PROPERLY INVOKED RULE 39(c)(1), AND THE EQUITABLE ISSUES WERE TRIED BY THE COURT WITH THE ASSISTANCE OF AN ADVISORY JURY.

This Court need not reach the remaining issues raised by URC in its opening

brief because they are irrelevant given the relief URC seeks—for this Court to

vacate the district court's orders regarding attorneys' fees.  Op. Br. at 60-61.  Were

the Court to reach the remaining issues, it should still affirm, for the district court

was correct to treat the jury's verdicts on these equitable defenses as advisory.

The default rule in the federal court system is that equitable issues are tried

by the court; there is no right to a jury trial on these issues.  *Granite State Ins. Co.*

*v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."). Federal Rule of Civil Procedure 39(c) provides the district court with two alternatives to the default rule—the use of an advisory jury, or the use of a binding jury when both parties consent. It provides:

> In an action not triable of right by a jury, the court, on motion or on its own:
>
> > (1) may try any issue with an advisory jury; or
> >
> > (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.

Fed. R. Civ. P. 39(c). Here, the district court properly invoked Rule 39(c)(1) and tried the equitable issues with the advice of the jury. The district court did not abuse its discretion in so doing. *See Kyei v. Oregon Dep't of Transp.*, 497 F. App'x 711, 713 (9th Cir. 2012) (citing Fed. R. Civ. P. 39(c) and *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1013 (9th Cir. 2010)); *see also Amtrust Inc. v. Larson*, 388 F.3d 594, 598 (8th Cir. 2004).

This Court should reject URC's attempt to impose a binding jury on these issues after the fact for the following reasons. *First*, the district court itself never consented to a binding jury, which is required by Rule 39(c)(2). *Second*, URC cannot now argue otherwise in an effort to invoke a more favorable ruling after the

fact.  *Third*, the short-hand reference to a "jury trial" in the pretrial order simply meant that there would be a jury on some issues; it did not command a jury trial on all issues.  *Fourth*, UEI never consented to have a binding jury on the equitable issues, which is required by Rule 39(c)(2).  And *fifth and finally*, URC has shown no prejudice stemming from the district court's decision to seek the advice of the jury.

### A.     The District Court Never Consented to a Binding Jury on the Equitable Issues.

The district court never invoked Rule 39(c)(2), and it never intended to utilize a binding jury on the equitable issues.  Even if the parties agree, the parties by themselves cannot invoke the use of a binding jury on equitable issues; they must also have the consent of the judge.  Fed. R. Civ. P. 39(c)(1); *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994) ("While the litigants are free to request a jury trial on an equitable claim, they cannot impose such a trial on an unwilling court."); *see also Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 968 n.2 (7th Cir. 2004) (same).

URC claims that the parties consented to a binding jury.  Op. Br. 40-42. While that claim is factually wrong, *see* Section II.D below, it is also not enough: As noted above, the court, too, must consent, and it did not.  Rather, it consistently maintained its right to decide the equitable issues.  A5-7; A31878-80, A31885-88,

A31889; A33529-30.  And URC has not shown—or even endeavored to show—otherwise.

URC cites *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995), for the proposition that the district court must invoke an advisory jury under Rule 39(c)(1) before trial.  Op. Br. 49-50.  However, *Fuller* had nothing to do with Rule 39(c), equitable issues, or advisory juries; rather, it involved Rules 38 and 39(a), the trial of an unquestionably legal issue, and whether Fuller's or the City's actions had constituted a valid *waiver* of the jury-trial right.  There, the Ninth Circuit held that *a party* cannot demand a jury trial and then unilaterally withdraw the demand once the judge hints that it may rule in the party's favor.  *Fuller*, 47 F.3d at 1532.  *Fuller* involved a legal issue for which there was a legal right to a binding jury, and the application of Rules 38 and 39(a) regarding demand, waiver, and withdrawal of the demand.  *Id.* at 1530.  The Ninth Circuit explained that in cases involving a legal right to a jury, the opposing party had the right to rely on an opponent's jury demand unless the procedures in Rule 39(a) were used to consent to a court determination.  *Id.* at 1532.

That has nothing to do with Rule 39(c).  Under that rule, which *does* apply here, a party's demand for a jury to decide—in a binding fashion—an issue "not triable of right by a jury" is ineffective unless the court and the opposing party each consent.  Fed. R. Civ. P. 39(c)(2).  Rule 39(c)(1), by contrast, permits the

court to empanel and consult an advisory jury without regard to the parties' consent.  Fed. R. Civ. P. 39(c)(1); *Kramer*, 355 F.3d at 968 n.2; *Merex*, 29 F.3d at 827.  The gamesmanship the Ninth Circuit was concerned about in *Fuller* was rooted in the policy reasons underlying Rule 39*(a)*, which governs the procedures for *withdrawing* a jury demand once a demand is made pursuant to Rule 38.  Those policy reasons are inapplicable where Rule 39*(c)* governs, because it applies, by its terms, to actions "not triable of right by a jury."  Because the district court never consented to a binding jury on the equitable issues, Rule 39(c)(2) was never invoked.  A2013, A2033, A2047.

### B.    URC Cannot Now Choose the More Favorable Ruling After the Fact.

To the extent that *Fuller*'s concerns about gamesmanship have any application to *this* case, it only raises concerns about *URC*'s gamesmanship, because URC—which was never entitled to a binding jury verdict on the equitable issues, *see Granite*, 76 F.3d at 1027—never made a motion under Rule 39(c)(2) to have the equitable issues "not triable of right by a jury" tried by a binding jury.  It was not until *after* URC received a favorable advisory ruling from the jury on the equitable issues that URC tried to transform that advisory verdict into a binding one.

URC did not object to the district court deciding the equitable issues with an advisory jury and cannot now object.  *OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d

- 23 -

1199, 1203 (10th Cir. 2007) ("The issue of whether the district court erred initially

when it decided, sua sponte, to impanel an advisory jury was waived by OCI when

it failed to object."); *Firemen's Ins. Co. of Newark, N. J. v. Smith*, 180 F.2d 371,

375 (8th Cir. 1950) ("It also follows that appellant cannot be heard to complain

because it in effect agreed to trial by an advisory jury in that it saved no objection

to the jury, but acquiesced in the procedure.").  URC was aware that the judge

would be deciding the equitable issues with the assistance of an advisory jury and

did not once object *until after* it received a favorable verdict from the jury.  *See,

e.g.*, A2013, A2033, A2047 (jury demands); A21845-47, A31473-74 (bifurcation

requests); A31878-80, A31885-88, A31889 (district court's references to the court

as trier of fact); A33529-30, A24877-79 (failure to object or mention in stipulation).

Rule 39(c)(2) protects against precisely this kind of gamesmanship by requiring

"the parties' consent" and the court's agreement *before* any "action not triable of

right by a jury" may nonetheless be tried to a binding jury.

### C.   The Pretrial Order Did Not *Command* a Jury Trial on *All* Issues.

URC says that the pretrial order required a jury trial on all issues.  Op. Br. at

19.  The record demonstrates otherwise.  URC points this Court to a one-page

minute order dated July 9, 2012 (656 days—almost two years—before trial, A509,

A534) making an abbreviated reference to a "jury trial."  That did not divest the

district court of its right to decide the equitable issues, or to allow a jury to issue an

advisory verdict.  Given that there were legal issues in the case, a minute order that anticipated a "jury trial" was correct, and would have been correct whether or not the parties had anticipated that the "jury trial" would have included an advisory verdict on some equitable issues.  In short, "jury trial" meant no more and no less than that—and it certainly did not mean "jury trial with binding verdict on all issues, even those issues not triable of right by a jury."

This is exactly how Judge Guilford understood the minute order, as well as the references to "jury trial" contained in the "Scheduling Order Specifying Procedures" entered that same day.  A2089-94.[1]  At the time these orders were entered, the Complaint, Answer, and Counterclaim had all been filed requesting a jury trial on all issues so triable.  A2013, A2033, A2047.  As the judge explained at the post-trial hearing on equitable defenses, the references to "jury trial" simply inform the court and its administrative personnel that a jury would have to be empaneled and selected:

> The rule 16 order is a rule 16 order.  And you are reading far more
> into that order which is really designed to let us know if we have to
> pull up a jury on the first day of trial.  When we put jury trial on that,
> we're not necessarily precluding – it's not our intent to preclude that
> there might not be equitable issues to be determined by the court such

---

[1] This is a modified form used routinely by Judge Guilford:
http://court.cacd.uscourts.gov/CACD/JudgeReq.nsf/2fb080863c88ab47882567c90 07fa070/5359419014eb2dae882579f5006b0824/$FILE/Scheduling%20Order%20 Specifying%20Procedures.pdf.

> as injunctive relief or whatever.  I'm saying you are reading a lot into
> that.

A33544-45.  The district court did not abuse its discretion by so interpreting its

prior orders in this fashion.  *Advanced Software Design Corp. v. Fiserve, Inc.*, 641

F.3d 1368, 1381 (Fed. Cir. 2011).

The cases on which URC relies are inapplicable and distinguishable.  Op. Br.

at 50.  The nonbinding district court decision in *Duhn Oil Tool, Inc. v. Cooper*

*Cameron Corp.*, 818 F. Supp. 2d 1193 (E.D. Cal. 2011), is factually

distinguishable because it involved an ongoing pretrial dispute about the extent of

the jury demand and whether the jury would be advisory.  *Id.* at 1200-02.  The

district court in *Duhn Oil* issued a final pretrial order defining the role of the jury

and asking for objections.  *Id.* at 1202.  The order stated the parties' contentions

regarding the scope of the jury and explained: "There will be a jury trial on willful

infringement issues and other issues to which the entitlement exists as a legal right.

In all other respects, the jury shall be advisory." *Id.*  Neither party objected to the

pretrial order.  *Id.*  After the trial, the district court concluded that "[a]lthough the

[final pretrial order] is not a model of clarity, the plain language and the parties'

course of conduct establish its meaning beyond the shadow of a doubt." *Id.* at

1207.  Here, by contrast, the pre-trial orders did not "establish [their] meaning" to

be that given by URC, and certainly not "beyond the shadow of a doubt."  Rather,

the orders at issue in this case, and their references to "jury trial," quite reasonably

meant "a jury trial will be held in this case on at least some issues," not "a binding jury verdict on all issues will be obtained."  And the district court's own reading of those orders is entitled to great deference.  A33544-45; *see Advanced Software*, 641 F.3d at 1381.

The parties' course of conduct was consistent with the court's understanding that the jury's verdict regarding equitable issues was advisory.  *See, e.g.*, A2013, A2033, A2047 (jury demands); A18461-62 (UEI memorandum); A21845-47, A31473-74 (bifurcation requests); A31878-80, A31885-88, A31889 (district court's references to self as trier of fact); A33529-30, A24877-79 (URC's failure to object or mention in stipulation).

URC's other cases, such as *Walker v. West Coast Fast Freight, Inc.*, 233 F.2d 939 (9th Cir. 1956), and *Wilson v. Muckala*, 303 F.3d 1207 (10th Cir. 2002), stand only for the unexceptional proposition that pretrial orders are ordinarily binding, such that evidence and theories of liability not mentioned in those orders would not be permitted at trial.  But that proposition does not establish that mere references to "jury trial" in a pretrial order mean that all issues, even those "not triable of right by a jury," Fed. R. Civ. P. 39(c), will not only be *tried* to a jury, but tried in a binding fashion.

URC's *post hoc* interpretation of those orders not only fails to square with the district court's more-important interpretation of its own orders, but also makes

no sense in view of the default rule that equitable issues are tried by the district court, not the jury. *See Granite*, 76 F.3d at 1027. To overcome that default rule, one would quite reasonably expect that the orders would have to specify that the "jury trial" would apply to *all issues*, and that the jury verdict would be not just advisory, but *binding*. The orders did nothing of the sort, and in light of all of those common-sense principles, the district court did not abuse its discretion in so interpreting its own orders.

### D.    UEI Did Not Consent to a Binding Jury on the Equitable Issues.

Under Rule 39(c), the district court could *not* have submitted the equitable issues in this case to a binding jury without UEI's consent. *See* Fed. R. Civ. P. 39(c)(2) ("the parties' consent" is required before a jury's verdict on an issue "not triable of right by a jury" can be made binding). UEI did not consent. The record is replete with evidence that UEI objected to having the jury decide the equitable issues:

- UEI's jury demand was limited to "all issues so triable." A2013.

- UEI objected to the equitable issues being presented to the jury in its memorandum of contentions of fact and law, which was also incorporated by reference into the proposed final pretrial order. A18461-62; A21838.

- UEI requested bifurcation in the proposed final pretrial order and at the April 21, 2014 hearing regarding the motion for bifurcation. A21845-47, A31473-74.

- • At the hearing on the equitable issues after trial, UEI's counsel stated on the record that he always thought the court was deciding the equitable issues. A33562.

The cases that URC cites as support for its argument that failure to object equals consent to a binding jury are inapposite. In *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541 (Fed. Cir. 1990), the defendant asserted inequitable conduct as a defense to patent infringement. The issue was put to the jury, which ruled against the defendant. *Id.* at 541-42. The defendant appealed, arguing that "the jury instructions constituted reversible error . . . because they submitted the issue of inequitable conduct to the jury." *Id.* at 542. This Court explained that the defendant "failed to object at trial to these instructions, and '[n]o party may assign as error the giving or failure to give an instruction unless that party objects *thereto* before the jury retires to consider its verdict.'" *Id.* (quoting Fed. R. Civ. P. 51). This Court rejected the defendant's argument that it did not need to object because "it had made clear in prior communications to the court its position." *Id.*; *see also id.* at 542 n.2 ("failure to object is treated as consent" to a binding jury verdict under Rule 39(c)). Here, in contrast, the court was aware of UEI's position, UEI consistently maintained that the issues were for the judge, not the jury; the court intended that the jury would be advisory; the court so interpreted its prior orders; and the court never submitted the equitable issues to the jury for a binding

decision.  A7.  Whether UEI waived its right to object to a jury instruction under Rule 51 is not at issue here, and *Modine* is inapplicable.

*Broadnax v. City of New Haven*, 415 F.3d 265, 272 (2d Cir. 2005), is similarly distinguishable.  In *Broadnax*, the plaintiff asked the jury, during closing argument, for an award of lost wages.  *Id.* at 267.  "At no time did defense counsel contend that the court, and not the jury, should determine any lost wages award." *Id.*  The defendant appealed, arguing that the district court erred by submitting the issue of lost wages to the jury.  *Id.* at 270-71.  The Second Circuit explained: "[W]e find sensible the proposition that where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence *may* be deemed 'consent' under Rule 39(c)."  *Id.* at 272 (emphasis added).  It then limited its holding to cases where "a party demands jury consideration of lost wages under Title VII."  *Id.*  The Second Circuit's holding in *Broadnax* was limited to the facts of that case and to instances where no special competence of the court is needed. And as the permissive language in *Broadnax* underscores, the district court still retains the discretion to utilize an advisory jury—as the district court intended to do, and did, here.

URC's argument on this point also omits the fact that even if both parties did consent to have a binding jury, the district court could have declined, and in this

case did decline, to submit the issues to a binding jury.  *See* Fed. R. Civ. P. 39(c)(1); *Kramer*, 355 F.3d at 968 n.2; *Merex*, 29 F.3d at 827.  That dispositive fact is absent from URC's cases.

The authorities URC cites for the proposition that the parties are entitled to know at the outset who the trier of fact will be are factually distinguishable.  Both *Bereda v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49 (3d Cir. 1989), and *Thompson v. Parkes*, 963 F.2d 885 (6th Cir. 1992), involved situations where the district court pronounced a verdict advisory only *after* the verdict was rendered.  *Bereda*, 865 F.2d at 50; *Thompson*, 963 F.2d at 887.

Here, by contrast, both parties' jury demands were limited to those issues so triable.  A2013, A2033, A2047.  UEI never consented to a binding jury.  A2013; A18461-62; A21838; A21845-47, A31473-74; A24884-24914; A33562.  And the district court gave the parties ample warning that it understood, long before the verdict, that the verdicts on the equitable defenses were going to be advisory only, and subject to later factfinding by the court.  *Bereda* and *Thompson* are limited to instances where both parties intend to seek binding verdicts under Rule 39(c)(2), and the district court originally agrees, but then, after the verdict, decides the jury was advisory.  That is demonstrably not the case here.

In *Pradier v. Elespuru*, 641 F.2d 808 (9th Cir. 1981), cited extensively by URC (Op. Br. at 30, 31, 45 & 47), the district court found that the plaintiff had

waived the right to a jury trial by failing to comply with a purely procedural local rule, and the court utilized an advisory jury. The Ninth Circuit reversed and remanded for a new trial, reasoning that the right to a jury trial is a Constitutional right, and so "courts should indulge every reasonable presumption against waiver." *Id.* at 811. In contrast, the right to a binding jury on equitable issues is not guaranteed by the Constitution; it is, for equitable issues, merely a procedural option which may be elected—but only if the parties and the court all agree to it. *See Granite*, 76 F.3d at 1027; Fed. R. Civ. P. 39(c)(2).

The fact that UEI filed a motion styled as a Rule 50(a) motion (*see* Op. Br. at 41-42) is not evidence of UEI's consent, particularly so in view of the fact that the district court never ruled on that motion. The Ninth Circuit affirmed a case where the district court deferred ruling on a Rule 50 motion and submitted the issue to an advisory jury; later, the district court denied the motion. *See Nester-Osborne v. Albertson's, Inc.*, 212 F. App'x 616, 617 (9th Cir. 2006). And several district courts in the Ninth Circuit have voluntarily converted Rule 50 motions to Rule 52(c) motions when the case involved an advisory jury, *Davis v. United States*, No. CIV. 07-00461ACK-LEK, 2009 WL 1455976, at *1 n.2 (D. Haw. May 26, 2009), or have ruled on such motions in the context of whether to adopt the advisory verdict, *United States v. Parker*, No. 3:07-CV-01969-H-JLB, 2015 WL 1745879, at *4 (S.D. Cal. Feb. 17, 2015) ("Where a party files a Rule 50(b) motion

following an advisory jury verdict, the court can 'decline to adjudicate the Rule 50(b) motion[ ], and instead consider the argument[ ] in the context of . . . whether to adopt the advisory jury's findings.'" (alterations in the original));

*Commonwealth Capital Corp. v. City of Tempe*, No. 2:09-CV-00274 JWS, 2011 WL 3759475, at *1 (D. Ariz. Aug. 25, 2011) ("After the jury returned its advisory verdict, the court denied CCC's pending motion for judgment as a matter of law and then heard from both sides on the appropriateness of the advisory verdict.");

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2009 WL 1561432, at *1 (N.D. Cal. June 1, 2009) (ruling on the plaintiff's renewed motion for judgment as a matter of law after the jury's advisory verdict).

The parties' discussion regarding jury instructions on the equitable issues is similarly not evidence of consent. A jury must be instructed even when the jury is advisory, and since an advisory jury may be empaneled without the parties' consent, *see* Fed. R. Civ. P. 39(c)(1), it is difficult to see how participating in an instruction conference, or not further pressing a bifurcation motion, evidences consent to a *binding* jury verdict under Rule 39(c)(2). *See, e.g.*, *Levi Strauss*, 719 F.3d at 1375 (discussing the district court's instructions to the advisory jury); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1353 (Fed. Cir. 2012) (discussing how after the district court concluded that it would consider the

jury's determination on obviousness advisory, the parties developed joint jury

instructions).

URC tries mightily to find isolated excerpts from the record that, it claims,

prove that UEI consented to a binding jury. However, the straws that URC picks

out of the record do not provide such proof:

- The fact that UEI mentioned the jury deciding the patent-misuse issue in a footnote in proposed jury instructions (Op. Br. at 40-41) is completely consistent with a recognition that the jury would provide an advisory verdict, but it does not show consent to a *binding* verdict. A23459 n.1.

- URC's reference to a confusing exchange about UEI's Rule 50 motion during a bench conference at trial, an exchange which occurred prior to UEI filing the Rule 50 motion being discussed, does not establish UEI's consent to a binding jury. Op. Br. 42, A33354-55. UEI's counsel's suggestion that, if the court denied its motion to remove laches and equitable estoppel from the case, "they ought to go to the jury," was perfectly consistent with UEI's understanding that an *advisory* jury would receive these issues.

- And URC's argument that UEI consented to a binding jury given the language in the proposed pretrial order is baffling. Op. Br. 41. While arguing in favor of bifurcation, UEI asserted that the equitable issues were for the judge to decide. A21845 ("[N]either URC's patent misuse defense nor its purported unclean hands defense (a defense URC pled as "estoppel"), which sound in equity, are jury issues."); *id.* (citing a case which held "that patent misuse defense will be tried before the court"). And UEI incorporated by reference its objection to the jury deciding the equitable issues, which was raised in its memorandum of contentions of law and fact, into the proposed final pretrial order. A21838. It strains reality for URC to suggest that UEI consented to a binding jury trial in a proposed pretrial order that *objected* to such a procedure.

This is particularly so when viewed against the entirety of the record, which shows UEI's consistent objection to having the jury decide the equitable issues. A2013 (jury demand limited to issues so triable), A18461-62 (UEI's memorandum of contentions of fact and law), A21845-47 (request for bifurcation); A31473-74 (same); A21838 (incorporating by reference UEI's memorandum of contentions of fact and law into the proposed final pretrial order).  URC consistently tries to frame the issue of consent as requiring UEI to "object to having the jury make a binding decision on the equitable issues," Op. Br. at 41, but—particularly in the context of this record, where UEI consistently objected to having a jury decide the equitable defenses as a binding matter—these handful of instances come nowhere close to showing the affirmative consent required by Rule 39(c)(2).

URC's argument that UEI made a strategic decision to invoke Rule 39(c)(2) (Op. Br. at 48-49) is based entirely on conjecture—and unreasonable conjecture at that.  The district court appropriately rejected this same argument, noting that "all of the equitable issues were potential negatives for [UEI]," and that "there was no possible upside for the Plaintiff in having the jury hear the relevant facts."  A6.

URC's need to rely on these one-off instances in the record speaks volumes. UEI never consented to a binding jury, and the district court never ordered a binding jury on the equitable issues.

### E.    URC Has Not Shown Prejudice.

Finally, URC has not shown any prejudice stemming from the failure of the court to treat the equitable issues decided by the jury as advisory rather than binding.  URC was never *entitled* to a jury on the equitable issues, and it has failed to show any prejudice.  *See Granite*, 76 F.3d at 1027.  Indeed, it is likely that it was UEI that was prejudiced by this decision to empanel an advisory jury, for, as the court recognized (A6), allowing the jury to hear all of this "inequitable" evidence may have prejudiced the jury with respect to its evaluation of the legal issues properly before it for binding adjudication.

Although it appears that neither this Court nor the Ninth Circuit have explicitly addressed the issue, several other circuits have held that where a district court fails to notify the parties that a verdict is advisory, reversal is only required where prejudice is shown.  *Merex*, 29 F.3d at 827 ("Finally, although Rule 39(c) does not expressly require advance notice to the parties of the court's intention to treat the jury as advisory, we agree that such notice is preferable.  In the absence of an express statutory mandate, however, we are not inclined to reverse on this basis alone, at least absent some demonstrable prejudice to the complaining party."); *see also Amtrust*, 388 F.3d at 598 (same); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 215 F.3d 182, 188 (1st Cir. 2000) (same); *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 375 (8th Cir. 1999) (same);

- 36 -

*Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 192 n.2 (7th Cir. 1994) (noting

that the circuits are not in unity on the subject, but declining to rule on the issue).

URC alleges no prejudice, and makes no claim that it would have tried the

case differently had it known that the jury verdict was going to be advisory instead

of binding. Instead, URC seeks to *inflict* prejudice upon UEI, and gain an unfair

advantage—having stood silently on the issue of the verdict's binding-ness until it

found out that the jury had reached a verdict in its favor.

The record reflects exactly these kinds of tactical shenanigans. URC was

aware of UEI's position that the jury should not decide the equitable issues.

A2013; A18461-62; A21838; A21845-47, A31473-74; A24884-24914; A33562.

Then, at the hearing on equitable issues, when URC could safely and full-

throatedly assert that the verdict should be binding, the district court repeatedly

pressed URC's counsel: "As an officer of the court standing before me now it is

your view that, throughout the trial, you never in any way contemplated that the

plaintiff would be making equitable arguments to the court at the end of the trial?"

Counsel's answer was not "No! Never!", but instead an evasion: "We thought

they would be requesting bifurcation." This non-responsiveness continued for

some time, after which the court observed: "It's odd you won't give me a direct

'yes' or 'no' answer to the question I ask." A33551-53. Yet again, at the end of

the hearing, the court asked counsel for URC: "As an officer before the court

- 37 -

standing before me now, is it your view that throughout the trial you always contemplated that no equitable arguments would be made after the jury was dismissed?" Counsel for URC responded, again, with his non-responsive response: "No. We thought they were going to seek bifurcation of some issues." A33562-63.

These exchanges prove the point. URC was aware that UEI objected to the jury even *hearing* the evidence regarding the equitable issues, let alone allowing the jury to *decide* those issues, because it would be prejudicial. URC cannot now claim that, having this knowledge, it nonetheless thought that UEI consented to a binding jury verdict on these prejudicial issues. The fact that UEI did not renew its motion for bifurcation is irrelevant. The district court made it clear that the trial would be limited to eight days. A31476-77. Bifurcation likely would have slowed down the trial and prevented UEI from making full use of the limited eight days given. A21834 ("URC estimates that the bench trial on equitable issues will take 4 days."). Deciding that the possible prejudice that might arise from the jury hearing the equitable issues was preferable to the delay required to bifurcate the trial is not evidence that UEI consented to the jury deciding the equitable issues.

In sum: Neither the court nor UEI consented to a binding jury verdict under Rule 39(c)(2). While URC's motivation for making contrary arguments on this appeal is transparent, those arguments do not justify disturbing the district court's careful, discretionary judgment with respect to attorneys' fees.

## III. THE DISTRICT COURT DID NOT VIOLATE THE SEVENTH AMENDMENT.

Finally, the district court did not violate the Seventh Amendment or abuse its discretion when it made factual findings and legal conclusions regarding the equitable issues of patent misuse and unclean hands. Its findings and conclusions with respect to the equitable issues were independent of those made by the jury with respect to the legal issue of validity, namely improper inventorship.

In *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962), the Supreme Court held that where the legal claims are "common" with those on which the equitable claims are based, "the legal claims . . . must be determined prior to . . . the equitable claims" in order to preserve the Seventh Amendment right to a jury trial. This Court dealt with this very issue in *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987). In *Gardco*, the district court held that the patentee was guilty of inequitable conduct, negating the need for a jury trial on the issues of validity and infringement. *Id.* at 1210-11. The patentee appealed, arguing that it had been denied a jury trial because "the issue of whether the patent is unenforceable for inequitable conduct would resolve factual issues common with factual issues reserved for jury trial." *Id.* at 1211, 1213.

This Court rejected the patentee's argument and affirmed the district court's ruling, holding that the issue of inequitable conduct was not in common with the issues of validity and infringement. *Id.* at 1213. This Court explained:

- 39 -

> The simple fact is that a patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct. Similarly, a valid patent may be (in the abstract) infringed, that is, the accused device may fall within the scope of the claim, but there will be no liability to the patentee when the patent is unenforceable. Thus the *conduct-of-the-applicant-in-the-PTO* issue raised in the nonjury trial and the separated infringement/validity issues are distinct and without commonality either as claims or in relation to the underlying fact issues.

*Id.* This Court reiterated this principle when it held that "inequitable conduct and validity are not 'common' issues" for purposes of the Seventh Amendment inquiry. *Agfa Corp. v. Crea Products Inc.*, 451 F.3d 1366, 1372-73 (Fed. Cir. 2006).

Because the legal claim of invalidity due to improper inventorship and the equitable claims of patent misuse and unclean hands are not "common" issues, the district court was not bound by any findings of the jury with respect to improper inventorship when it decided the equitable issues. Regardless, the district court's findings of fact for the equitable issues were independent of and in accord with the jury's decision on improper inventorship. The district court reviewed the evidence regarding UEI's motive for bringing suit and found that there was not "sufficient indicia of bad faith." A17. It also explained that "while the jury found the '426 Patent invalid for improper inventorship, [URC] did not establish that Plaintiff knew that the patent was invalid, and so has not established that its assertion of the patent was in bad faith on that ground." A17. The court also explained that "[URC] repeatedly points to [UEI's] intent to gain a competitive advantage from

- 40 -

this lawsuit, but does not establish that [UEI] acted deceitfully or unfairly." A18.

Therefore, the district court did not violate the Seventh Amendment by failing to

find that UEI engaged in patent misuse or unclean hands or otherwise.

URC's cases are inapposite. In *Kinetic Concepts, Inc. v. Smith & Nephew,*

*Inc.*, 688 F.3d 1342 (Fed. Cir. 2012), this Court explained that it "d[id] not believe

that the district court intended to invoke Rule 39(c)(1) when it referred to an

'advisory jury.'" *Id.* at 1357. Instead, the district court consulted an advisory jury

for the issue of obviousness, a legal issue. *Id.* at 1358-59. To decide the issue of

obviousness, the jury had to decide the four underlying factual issues commonly

referred to as the *Graham* factors. *Id.* at 1360; *see also Perkin-Elmer Corp. v.*

*Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984). Given this unique

procedural posture, the district court was required to accept the jury's factual

findings that were supported by substantial evidence when the court made the

ultimate decision regarding the legal issue of obviousness. *Kinetic Concepts*, 688

F.3d at 1360.

URC's attempt to stretch the holding of *Kinetic Concepts* to support its

argument that a court is bound by the jury's verdict regarding legal issues when the

court decides equitable issues is in conflict with *Gardco* and *Agfa*. When deciding

equitable issues, a court is only bound by the jury's factual findings regarding legal

claims if those claims are in "common" with the equitable issues to be decided by

the court.  *Gardco*, 820 F.3d at 1213; *Agfa*, 451 F.3d at 1372-73.  And this Court has already declared that a legal claim of invalidity is not in "common" with inequitable conduct.  *Id.*

In the proposed final pretrial order, URC requested that if the court did bifurcate the trial that it "hold the equitable phase of the trial on patent misuse and unclean hands prior to a jury hearing the legal issues of invalidity and noninfringement."  A21847-48.  Citing *Agfa*, 451 F.3d at 1371-75, URC argued: "Hearing the equitable issues before the legal issues would be more appropriate than hearing the legal issues first, because a finding that the '906 patent is unenforceable due to UEI's unclean hands and patent misuse would obviate the more expensive and technically involved jury trial phase on invalidity and unenforceability."  A21847-48; *see also* A31474-75 (asserting the same at the hearing).  Interestingly, URC now seeks to switch positions and argue that the district court violated the Seventh Amendment by deciding the equitable issues independent of the jury.

In *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988 (Fed. Cir. 1995), this Court explained that the district court's finding regarding one aspect of its materiality determination was "in apparent conflict with the jury's findings with respect to validity and infringement."  *Id.* at 994-95.  Accordingly, the district court's findings regarding materiality and intent—the necessary factors to show

inequitable conduct—were clearly erroneous.  *Id.* at 996.  Similarly, in *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1474-75 (9th Cir. 1993), the Ninth Circuit ruled that the district court erred "in factfinding contrary to the implicit findings of the jury verdict" regarding whether the plaintiff would have been fired regardless of his refusal to allow an improper search.  Given the language of the jury instruction, the Ninth Circuit concluded that the jury "could *not* have awarded the level of damages it awarded without finding that [the plaintiff] would not have been discharged except for his refusal to be illegally searched."  *Id.* at 1474.

In contrast, URC has not, and cannot, argue that the district court's findings here regarding patent misuse and unclean hands were clearly erroneous.  Indeed, the district court rejected those defenses based on URC's failure to prove essential elements of those equitable defenses that were different than the elements of the legal claims decided by the jury.  A17 (rejecting misuse defense by relying on absence of evidence of Plaintiff's belief "that it was asserting patents that were invalid, non-infringed, or unenforceable"); A18 (rejecting unclean-hands defense because of absence of evidence "that Plaintiff acted deceitfully or unfairly").  The jury instructions with respect to the issue of improper inventorship did not require the jury to find these "aggravating" facts (subjective belief in the case of misuse; deceit or unfair acts in the case of unclean hands).  *Compare* A33391-92

(inventorship instruction); *with* A33392-93 (misuse instruction) & A33399-33400 (unclean-hands instruction).

Instead, URC argues that the district court was required to guess at what underlying facts the jury might have believed when deciding the issue of improper inventorship. But this is not a case where the jury was required to complete special interrogatories on the factual questions underlying the equitable issues. *Cf. Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1104 (Fed. Cir. 2003) (explaining how "the jury answered special interrogatories concerning the factual questions underlying the issue of inequitable conduct"). Here, the jury verdict and the jury instructions do not provide any guidance regarding what underlying facts the jury actually found. The jury could have found improper inventorship without finding bad faith, improper purpose, or inequitable conduct; indeed, the jury's instructions on the legal issue of inventorship did not require any such findings as a prerequisite. The Seventh Amendment does not allow—let alone require—such mindreading or guesswork.

## **CONCLUSION**

The judgment should be affirmed.

Dated: February 25, 2016                    Respectfully submitted,


                                            */s/ Gregory A. Castanias*

David B. Cochran                            Gregory A. Castanias
Thomas R. Goots                             JONES DAY
Sheryl H. Love                              51 Louisiana Avenue, N.W.
JONES DAY                                   Washington, D.C. 20001.2113
901 Lakeside Avenue                         (202) 879-3939
Cleveland, OH 44114                         gcastanias@jonesday.com
(216) 586-3939
dcochran@jonesday.com                       Mark A. Finkelstein
trgootsjonesday.com                         Jaclyn B. Stahl
shlove@jonesday.com                         JONES DAY
                                            3161 Michelson Drive, #800
                                            Irvine, CA 92612
                                            (949) 851-3939
                                            mafinkelstein@jonesday.com
                                            jstahl@jonesday.com

                                            *Attorneys for Plaintiff-Appellee*
                                            *Universal Electronics, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2016, I filed the foregoing Brief for

Plaintiff-Appellee Universal Electronics, Inc. with the Clerk of the United States

Court of Appeals for the Federal Circuit via the CM/ECF system, which will send

notice of such filing to all registered users.


Dated:  February 25, 2016                    */s/ Gregory A. Castanias*

                                             Gregory A. Castanias

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 11,095 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  February 25, 2016              */s/ Gregory A. Castanias*
                                        Gregory A. Castanias