Nos. 2015-1410, -1561, 2016-1055

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

UNIVERSAL ELECTRONICS, INC.,

*Plaintiff-Appellee*,

v.

UNIVERSAL REMOTE CONTROL, INC.,

*Defendant-Appellant*.

---

Appeals from the United States District Court for the Central District of
California in Case No. 8:12-cv-00329, Judge Andrew J. Guilford

---

## REPLY BRIEF OF DEFENDANT-APPELLANT
## UNIVERSAL REMOTE CONTROL, INC.

---

Constantine L. Trela, Jr.
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000

Anna M. Weinberg
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone:  (202) 736-8000

Teague I. Donahey
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, Idaho  83702
Telephone:  (208) 383-3988

Peter H. Kang
SIDLEY AUSTIN LLP
1001 Page Mill Road, Bldg. 1
Palo Alto, California  94304
Telephone:  (650) 565-7000

Theodore W. Chandler
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000

Douglas A. Miro
OSTROLENK FABER LLP
1180 Avenue of the Americas, 7th Floor
New York, New York  10036
Telephone:  (212) 382-0700

*Counsel for Defendant-Appellant
Universal Remote Control, Inc.*

April 4, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Universal Electronics, Inc.    **v.**    Universal Remote Control, Inc.

Case No.    15-1410

## CERTIFICATE OF INTEREST

Counsel for the ~~(petitioner)~~ (appellant) ~~(respondent)~~ ~~(appellee)~~ ~~(amicus)~~ (name of party)

Universal Remote Control, Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Universal Remote Control, Inc.

2.    The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

Universal Remote Control, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

None

4.  ☒    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Peter Kang, Constantine Trela, Samuel Miller, Theodore Chandler, Clarence Rowland (former), Cynthia Chi (former) and Anna Weinberg of Sidley Austin LLP; Douglas Miro, Martin Pfeffer, Michael Hurley, and Keith Barkaus of Ostrolenk Faber LLP; Brian Brookey and Steve Lauridsen of Tucker Ellis LLP; and Teague I. Donahey of Holland & Hart, LLP.

2/1/2016
Date

/s/ Peter H. Kang
Signature of counsel

Please Note: All questions must be answered

Peter H. Kang

cc:    All Counsel of Record

Printed name of counsel

Reset Fields

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................ 1

ARGUMENT ..................................................................... 4

I.    Under Rule 39, the jury's verdicts of equitable estoppel, patent misuse, and unclean hands were binding. ..................................... 4

    A.    UEI's proposed "default" rule that equitable issues are decided by the judge, unless the judge affirmatively "consents" to have those issues decided by the jury, is wrong as a matter of law. ............ 5

    B.    Having decided *not* to renew its request to bifurcate the equitable issues, and instead to let a hometown jury decide, UEI is the one now trying to "choose the more favorable ruling after the fact." ....................................................................... 9

    C.    The Rule 16 order calling for a "jury trial" was never changed by any subsequent order, and UEI never asked for an advisory jury ................................................................................ 13

    D.    Because UEI did not renew its request for bifurcation, and did not object to sending the equitable issues to the jury, UEI is deemed to have consented to a binding jury verdict under Rule 39(c)(2). .......................................................................... 15

    E.    In the 9th Circuit, a finding of "prejudice" is not required, but in any event, URC was prejudiced. ..................................... 18

II.    Under the Seventh Amendment, the district court erred in not following the jury's implicit factual determinations with respect to the legal issue of improper inventorship. .......................................... 19

III.    The district court's exceptional case decision cannot be affirmed based on speculation that the district court might have reached the same result even if it had accepted the jury's verdicts of patent misuse and unclean hands ........................................................ 22

CONCLUSION ................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Advanced Software Design Corp. v. Fiserve, Inc.*,
    641 F.3d 1368 (Fed. Cir. 2011) ..................................................................14

*Agfa Corp. v. Creo Prods. Inc.*,
    451 F.3d 1366 (Fed. Cir. 2006) ..................................................................21

*Alexander v. Gerhardt Enters., Inc.*,
    40 F.3d 187 (7th Cir. 1994) .........................................................................18

*Amtrust Inc. v. Larson*,
    388 F.3d 594 (8th Cir. 2004) .......................................................................18

*Aqua Shield v. Inter Pool Cover Team*,
    774 F.3d 766 (Fed. Cir. 2014) ....................................................................24

*Bereda v. Pickering Creek Indus. Park, Inc.*,
    865 F.2d 49 (3d Cir. 1989) .................................................................. passim

*Broadnax v. City of New Haven*,
    415 F.3d 265 (2d Cir. 2005) ........................................................... 5, 7, 9, 15

*Cabinet Vision v. Cabnetware*,
    129 F.3d 595 (Fed. Cir. 1997) ....................................................................21

*Commonwealth Capital Corp. v. City of Tempe*,
    No. 09-274, 2011 WL 3759475 (D. Ariz. Aug. 25, 2011) ...........................17

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962)....................................................................................20

*Davis v. United States*,
    No. 07-461, 2009 WL 1455976 (D. Haw. May 26, 2009) ...........................17

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*,
    215 F.3d 182 (1st Cir. 2000)................................................................. 8, 18

*Firemen's Ins. Co. of Newark, N.J. v. Smith*,
  180 F.2d 371 (8th Cir. 1950) ........................................................12

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
  820 F.2d 1209 (Fed. Cir. 1987) ....................................................21

*Garza v. Starr Cty.*,
  No. 14-41343, 2015 WL 6152893
  (5th Cir. Oct. 20, 2015) (per curiam) (unpublished) ............................ passim

*Granite State Ins. Co. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996) ..........................................................5

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S. Ct. 1744 (2014)........................................................... 23, 27

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
  112 F. Supp. 3d 888 (D. Minn. 2015) .........................................25

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
  576 Fed. App'x 1002 (Fed. Cir. Aug. 26, 2014) (per curiam) ....................25

*Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*,
  195 F.3d 368 (8th Cir. 1999) ........................................................18

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012) ............................................ 17, 20

*Kramer v. Banc of Am. Sec., LLC*,
  355 F.3d 961 (7th Cir. 2004) ..........................................................7

*L.A. Police Protective League v. Gates*,
  995 F.2d 1469 (9th Cir. 1993) ......................................................21

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  719 F.3d 1367 (Fed. Cir. 2013) ....................................................17

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  No. 07-3752, 2009 WL 1561432 (N.D. Cal. June 1, 2009) ..........................17

*Merex A.G. v. Fairchild Weston Sys., Inc.*,
  29 F.3d 821 (2d Cir. 1994) ............................................. 6, 7, 8, 18

*Modine Mfg. Co. v. Allen Group, Inc.*,
  917 F.2d 538 (Fed. Cir. 1990) ............................................................... passim

*Nester-Osborne v. Albertson's, Inc.*,
  212 Fed. App'x 616 (9th Cir. 2006) ............................................................17

*OCI Wyo., L.P. v. PacifiCorp*,
  479 F.3d 1199 (10th Cir. 2007) ..................................................................12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014)............................................................................ 24, 25

*Pradier v. Elespuru*,
  641 F.2d 808 (9th Cir. 1981) ................................................................ passim

*Ryco, Inc. v. Ag-Bag Corp.*,
  857 F.2d 1418 (Fed. Cir. 1988) ..................................................................24

*SFA Systems, LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ....................................................... 25, 26, 27

*Shum v. Intel Corp.*,
  499 F.3d 1272 (Fed. Cir. 2007) ..................................................................21

*Stryker Corp. v. Zimmer, Inc.*,
  782 F.3d 649  (Fed. Cir. 2015), *cert. granted*,
  136 S. Ct. 356 (U.S. Oct. 19, 2015) (No. 14-1520).....................................24

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
  44 F.3d 988 (Fed. Cir. 1995) ......................................................................21

*Thompson v. Parkes*,
  963 F.2d 885 (6th Cir. 1992) ................................................................ passim

*United States v. Parker*,
  No. 07-1969, 2015 WL 1745879 (S.D. Cal. Feb. 17, 2015) ........................17

## **Rules**

Fed. R. Civ. P. 16 ....................................................................................13

Fed. R. Civ. P. 39 ......................................................................................4

Fed. R. Civ. P. 39(a)(2) ............................................................................................4

Fed. R. Civ. P. 39(c)(1) ............................................................................................4

Fed. R. Civ. P. 39(c)(2) ...................................................................................... 11, 15

Fed. R. Civ. P. 50(a) ..............................................................................................16

## INTRODUCTION

Jury verdicts cannot be retroactively declared "advisory" after they are rendered.  Fundamentally the parties do not dispute this point.  That alone warrants granting URC its requested relief.

UEI's primary response is an unfounded plea that this Court should avoid the merits of URC's appeal altogether by assuming that the district court would reach the same result on remand even if this Court found that legal error had occurred.  As explained below in Section III, pp. 22–27, that plea both misunderstands the nature of discretionary decisions and ignores clear precedent of this Court.  But UEI's desire to avoid the merits is easy to understand.

The key cases — *Modine Manufacturing Co. v. Allen Group, Inc.*, 917 F.2d 538, 542 & n.2 (Fed. Cir. 1990) (applying Ninth Circuit law); *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981); *Bereda v. Pickering Creek Industrial Park, Inc.*, 865 F.2d 49, 52–53 (3d Cir. 1989); and *Thompson v. Parkes*, 963 F.2d 885, 887–90 (6th Cir. 1992) — make clear that the jury's verdicts on the equitable issues were binding in light of UEI's failure to object, and that it was legal error for the district court to announce, after the fact, that it would treat the verdicts as merely advisory.  Indeed, when UEI finally gets around to discussing these key cases, at pages 29–32 of its brief, it does not dispute their holdings; instead, UEI tries to distinguish them on the facts.  But in doing so, UEI ignores a key fact in this case.

The key fact ignored throughout UEI's brief is that UEI never renewed its request to bifurcate the equitable issues. UEI made a deliberate, strategic decision to let a hometown jury decide the equitable issues. UEI's brief focuses on its original request to bifurcate the equitable issues so that the jury would never hear the damning evidence of its misconduct. UEI ignores, however, that when the district court decided at the pretrial conference that UEI would need to renew its bifurcation request during trial — which meant that URC could let the cat out of the bag in opening statements, which it did — UEI changed its strategy and decided that it would be better off having those equitable issues decided by a hometown jury (which would be hearing about those issues anyway) rather than by a judge who had recently held on summary judgment that URC's equitable defenses had merit. From that point forward, UEI never renewed its request to bifurcate and never objected to the jury deciding all issues. On this record, the jury's verdict was therefore binding.

In light of these facts and the holdings of *Modine*, *Pradier*, *Bereda*, and *Thompson*, it is not surprising that UEI wants to avoid the merits. What is surprising — and ironic — is UEI's rhetoric: "URC simply seeks more money — $9.2 million in attorneys' fees rather than the $4.6 million awarded . . . . But enough is enough. . . . This appeal, which should not have been brought, now serves as a cautionary tale of overreaching." Red Br. 2, 3.

URC's desire to recover all of its fees ($9.2 million) rather than only half ($4.6 million) is not a matter of "overreaching." The difference of $4.6 million is significant to a small company like URC, which only earns about $3 million annually from its cable remote controls. A34992. UEI, in contrast, is a large, publicly-traded company with 70% of the market for cable remote controls. *See* Blue Br. 8. The cost of this litigation was an integral part of UEI's strategy to push URC — its primary competitor, with 20% of the market — out of business, according to a number of emails presented at trial: "I will repeat again so it is really clear. I NEED URC to be sued before this Time Warner RFQ comes out. If this does not happen then there is little value in it for us directly."; "We are going to push URC's margin and price DOWN. That along with the current lawsuit should push them to the brink. This will be payback for Time Warner." *See* Blue Br. 14–15. To make matters worse, UEI as the plaintiff hired a contingency law firm to avoid spending its own money on the litigation, while URC as the defendant had to pay the full cost of litigation out of pocket.

And UEI did not stop with this lawsuit. A year later, it filed a third lawsuit against URC (No. 13-984), which is still pending. Thus it is ironic that UEI now tries to play the victim, when it is the one imposing the enormous expense of litigation on URC. This appeal cannot remedy all of UEI's wrongdoing, but restoring the jury's verdicts of equitable estoppel, patent misuse, and unclean

hands — and remanding so the district court can decide in the first instance whether additional fees are warranted in light of those verdicts — would be an important step toward stopping UEI's attempt to drive URC out of business through the cost of unfounded litigation.

## ARGUMENT

### I. Under Rule 39, the jury's verdicts of equitable estoppel, patent misuse, and unclean hands were binding.

On the merits, the premise of UEI's arguments — and the premise of the district court's reasoning — is that "[t]he *default* rule in the federal court system is that equitable issues are tried by the court." Red Br. 19 (emphasis added); *see also* A33544:14–47:3 (district court's reasoning). UEI resorts to this "default" rule argument because there is no dispute that, prior to the jury's verdict, the district court never ruled (pursuant to Rule 39(a)(2) or otherwise) that URC lacked a Seventh Amendment right to a jury determination on the equitable issues that URC contended were intertwined with the legal issues, and the court never ruled that the jury's verdict would be advisory (pursuant to Rule 39(c)(1)). Rather, the district court's only ruling was that UEI could renew its request to bifurcate the equitable issues during the trial, A31476:16–77:11, which UEI chose not to do (a fact barely acknowledged throughout UEI's brief). Having waived its request to bifurcate — which meant that the district court never returned to the question of how the equitable issues would be decided — UEI is forced to argue on appeal that by

"default" equitable issues are decided by the court.  As explained below, however, to the extent there is a "default" rule when issues are sent to the jury, the default is that the jury's verdict will be binding, not advisory.

### A.   UEI's proposed "default" rule that equitable issues are decided by the judge, unless the judge affirmatively "consents" to have those issues decided by the jury, is wrong as a matter of law.

The only case that UEI cites in support of its proposed "default" rule that equitable issues are decided by the court is *Granite State Insurance Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).  *See* Red Br. 19–20.  But the holding of *Granite* does not support UEI's proposed "default" rule.  In *Granite*, there was no jury verdict because the court decided the equitable issue on its own.  *See* 76 F.3d at 1026.  The question here is what happens when the jury does, in fact, decide an equitable issue.  If the court was silent about whether the jury's verdict would be binding or advisory, what is the "default"?  *Granite* does not address that question.

All of the cases that have considered that question have held that the jury's verdict on the equitable issue is binding — contrary to UEI's proposed "default" rule — as explained in URC's opening brief.  *See* Blue Br. 36–39 (citing *Modine*, 917 F.2d at 542 & n.2; *Bereda*, 865 F.2d at 52–53; *Thompson*, 963 F.2d at 887–90; *Broadnax v. City of New Haven*, 415 F.3d 265, 270–72 (2d Cir. 2005)).  The Fifth Circuit recently reached the same result on similar facts, reversing and remanding

to the district court to reinstate the jury's verdict on equitable issues where the district court did not address whether the verdict was advisory until after trial. *See Garza v. Starr Cty.*, No. 14-41343, 2015 WL 6152893, at *3 (5th Cir. Oct. 20, 2015) (per curiam) (unpublished).

Similarly, UEI's related argument that a jury's verdict on an equitable issue will be advisory unless the judge has affirmatively "consented" to a binding verdict, *see* Red Br. 21–23, is inconsistent with the holdings of the cases cited above. None of those cases involved clear "consent" by the district court (hence the disagreement on appeal), and two involved a district court that apparently believed all along that the jury's verdict would be advisory, *see Garza*, 2015 WL 6152893, at *3 (district court stated, after trial, "the jury's verdict on front pay, as you know, is advisory"); *Thompson*, 963 F.2d at 886 (district court stated, just before trial, "[t]here is a provision under the Federal rules for advisory verdicts, and I do it all the time, and what I could do is submit it to the jury and then if I consider it later on to be inequitable [sic] I could consider an advisory verdict").

To be sure, if there is no right to a jury on an issue, then regardless of whether the parties want a binding jury, the district court can declare itself the finder of fact *before* there is a verdict and decide the issue itself (with or without an advisory jury), as UEI argues. *See* Red Br. 21 (citing *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994); *Kramer v. Banc of Am. Sec.,*

*LLC*, 355 F.3d 961, 968 n.2 (7th Cir. 2004)).  But that is not what happened in this case:  The district court never struck URC's jury demand, never rejected URC's argument that the equitable issues were intertwined with the legal issues and should be decided by the jury under the Seventh Amendment, and never declared itself the finder of fact on these issues before they were sent to the jury.  *See* A21847:4–:14, A31475:21–76:3, A33545:15–:21, A33556:19–:23.  Instead, at the pretrial conference, the district court decided to "withold[] judgment at this time" and gave UEI an opportunity to renew its request for bifurcation during trial (at which time the court would have had to address URC's Seventh Amendment argument).  *See* A31476:16–77:8.  But UEI never raised bifurcation again, so the district court never returned to the question of how the equitable issues would be decided until *after* the jury returned its verdict.  Thus, this is not a case like *Merex*, where the district court ruled before the verdict that the jury would be advisory; this is a case where nobody said anything about an advisory jury on the equitable issues until after the verdict, as in *Modine*, *Bereda*, *Thompson*, *Broadnax*, and now *Garza*, all of which held that the jury's verdict was binding.  Although UEI relies on *Merex* to support its position, *Merex* itself acknowledges that the relevant cases here, such as *Thompson*, are "starkly different" from the facts of *Merex* because "[t]here, the trial court declared the jury verdict advisory one week after the jury had returned its verdict" whereas in *Merex* the district court "did not wait until the

verdict was returned before deciding that the verdict would be advisory." 29 F.3d at 826–27 (discussing *Thompson*, 963 F.2d at 887–88). In *Merex*, the district court declared that the verdict would be advisory ahead of time, so "there was no danger that the trial judge would veto the jury's verdict." 29 F.3d at 827 (contrasting the facts in *Thompson* and *Bereda*).

UEI argues that the district court here "consistently maintained its right to decide the equitable issues." Red Br. 21–22 (citing A5–7; A31878–80, A31885–88, A31889; A33529–30). But UEI's citations to the record do not withstand scrutiny. The first and last citations (A5–7 and A33529–30) are to statements by the court *after* the jury's verdict, which is too late. *See Pradier*, 641 F.2d at 811 (9th Cir.) ("The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury."); *see also Bereda*, 865 F.2d at 53 (3d Cir.) (same); *Garza*, 2015 WL 6152893, at *3 (5th Cir.) (same); *Thompson*, 963 F.2d at 889 (6th Cir.) (same); *cf. Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 215 F.3d 182, 187 (1st Cir. 2000) (affirming, but not endorsing, district court's decision to declare the jury advisory in the middle of trial, but still *before* the jury's verdict); *Merex*, 29 F.3d at 827 (2d Cir.) (same).

UEI's other record citations (A31878–80, A31885–88, A31889) are to passing comments by the judge on the second day of an eight-day trial to "me as a partial trier of fact." But that is insufficient to make the jury's verdict advisory.

First, the rule in the Ninth Circuit (which governs here) — like the rule in the Third, Fifth, and Sixth Circuits, as noted in the previous paragraph — is that the judge must declare the jury advisory *before* trial begins, not on the second day of trial. *See Pradier*, 641 F.2d at 811. Second, the judge's passing comments were neither a ruling on URC's Seventh Amendment argument nor a declaration that the jury's verdict would be advisory; they merely reflected the pretrial ruling that at some later point in the trial UEI could renew its request to bifurcate certain issues, *see* A31476:24–77:8, in which case the court would be "a partial trier of fact" with respect to those issues. The timing is important: these comments were made early in the trial, so it was still possible for the court to become a partial trier of fact, depending on UEI's tactical decision on whether to renew its request to bifurcate. But UEI never renewed its request to bifurcate, and thus all of the issues were sent to the jury without any further discussion or ruling by the district court. In this situation, the "default" rule according to *Modine*, *Bereda*, *Thompson*, *Broadnax*, and now *Garza* is that the jury's verdict is binding.

**B.      Having decided *not* to renew its request to bifurcate the equitable issues, and instead to let a hometown jury decide, UEI is the one now trying to "choose the more favorable ruling after the fact."**

UEI's assertions about URC's "gamesmanship" are inconsistent with two significant facts, both of which UEI repeatedly ignores: First, the court ruled at the pretrial conference that if UEI wanted to bifurcate any equitable issue, UEI had to

-9-

renew its request during trial, but UEI decided *not* to do so, thereby leaving all issues to be decided by the jury instead. *See* Blue Br. 22–26. Second, UEI made this strategic decision because the district court's ruling meant that the jury would hear about the equitable issues during trial regardless of whether UEI renewed its request to bifurcate. *See* A31762:24–63:11 (preliminary jury instructions on equitable issues); A31819:23–20:16, A31834:19–40:4 (opening statements about UEI's unclean hands and patent misuse). After this ruling at the pretrial conference, UEI reasonably concluded that it would be better off having those equitable issues decided by a hometown jury (which would hear about them anyway) rather than by a judge who had recently held on summary judgment that URC's equitable defenses had merit. *See* Blue Br. 48–49 (citing A16596:19–600:27).

The colloquy on the second day of trial where the district court made a passing reference to itself as a "partial trier of fact" — which UEI now argues supports its position — in fact shows why UEI did *not* want the district court to decide the equitable issues (and why UEI never renewed its request to bifurcate). Context is necessary; these statements concerned UEI's objections of "401, 402, 403, 601, 602, 604, 801, 802, 901, F" to nearly every one of URC's deposition designations for a prior art witness. *See* A23650–69. The district court described UEI's objections as "pretty outrageous," A31669:24–70:13, and then later (in the

colloquy in question) stated, "I can't imagine why people who are partly trying this case to this Court aren't listening to what this Court says about effective advocacy. I can't believe it. It's unfathomable to me that you are trying to be advocates to me *as a partial trier of fact . . . .*" A31879:21–80:16 (emphasis added). Given this reprimand, it is no surprise that UEI never renewed its request to bifurcate and instead let a hometown jury decide the equitable issues.

UEI does not deny any of this; instead it merely states, "The fact that UEI did not renew its motion for bifurcation is irrelevant." Red Br. 38. Hardly. UEI's gamesmanship explains why the trial unfolded as it did, and undercuts UEI's accusations that URC was the one trying to game the system. URC's position throughout these proceedings has been simple, consistent, and unsurprising: URC argued that under the Seventh Amendment the jury should decide all of the equitable issues, which cast an extremely negative light on UEI, because they were intertwined with the legal issues. A21847:4–:14, A31475:21–76:3, A33545:15–:21.

UEI now tries to blame URC for failing to "ma[k]e a motion under Rule 39(c)(2) to have the equitable issues . . . tried by a binding jury." Red Br. 23. But as explained above, URC did request a binding jury by invoking the Seventh Amendment, and URC's proposed verdict form assumed a binding jury on all issues other than obviousness, *see* A22092:8. For similar reasons, UEI's assertions

that "URC did not object to the district court deciding the equitable issues with an advisory jury" and "URC was aware that the judge would be deciding the equitable issues with the assistance of an advisory jury and did not once object" make no sense. *See* Red Br. 23, 24 (citing *OCI Wyo., L.P. v. PacifiCorp*, 479 F.3d 1199, 1203 (10th Cir. 2007); *Firemen's Ins. Co. of Newark, N.J. v. Smith*, 180 F.2d 371, 375 (8th Cir. 1950)). Not once in more than 2,000 pages of trial transcript did the district court (or UEI) ever say that the jury's verdict would be advisory, and thus URC had no reason to object to an advisory jury or to repeat its arguments under the Seventh Amendment. Nor was there any reason for URC to react to the district court's passing reference, on the second day of trial, to itself as a "partial trier of fact," because that was consistent with the pretrial ruling that UEI could renew its request to bifurcate certain issues. The "failure to object" was by UEI, not URC — UEI failed to object to a binding jury. In a similar situation, this Court (applying Ninth Circuit law) concluded that the jury's decision on the equitable issue was binding. *See* Blue Br. 37–38 (discussing *Modine*, 917 F.2d at 542 & n.2). The result should be the same here.

Finally, UEI complains that URC did not object to the court's post-verdict statement that "to the extent there were equitable issues, we all know those were advisory. I invite you to maybe talk among yourselves what the schedule will be for future motions and such. For now, may I release this jury? Any objection to

doing that?"  A33529:15–:20.  *See* Red Br. 24.  At that point, there was no need to object because the district court had specifically instructed the parties to save their arguments for "future motions" (which is what URC did, *see* A24930–45).  For similar reasons, there was no need for URC to object in the stipulation setting forth the briefing schedule for those "future motions."  *See* Red Br. 24 (citing A24877–79).  Indeed, URC specifically edited the stipulation to make it "neutral about which issues may or may not be equitable" and to remove all references to findings of fact under Rule 52 precisely to preempt the argument that UEI is now raising.  *See* A25423–31.  In any event, as a matter of law, "these post-trial statements do not alter the fact that no mention of an advisory verdict was made before the verdict was returned."  *Garza*, 2015 WL 6152893, at *3 (holding that jury's verdict was binding).

### C. The Rule 16 order calling for a "jury trial" was never changed by any subsequent order, and UEI never asked for an advisory jury.

UEI's argument that the Rule 16 order calling for a "Jury Trial" did not actually mean what it said, *see* Red Br. 24–28, ultimately reduces to its flawed premise that the "default" rule is that equitable issues are decided by the court.  That premise is incorrect, *see supra* pp. 4–9, especially when the district court never issued a final pretrial order modifying the Rule 16 order that said "Jury Trial," *see* A31460:7–:8, A33556:19–:23.

For similar reasons, UEI is incorrect that "[t]he district court did not abuse its discretion by so interpreting its prior orders in this fashion [*i.e.*, consistent with UEI's proposed 'default' rule]."  Red Br. 26 (citing *Advanced Software Design Corp. v. Fiserve, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011)).  UEI's argument contradicts the rule of *Pradier* that "[t]he parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury," 641 F.3d at 811, and also contradicts the holdings of *Bereda*, *Thompson*, and *Garza*, which reversed under this fact pattern.  The *Advanced Software* case cited by UEI is distinguishable and unremarkable:  In that case, the district court was reviewing a deadline for amendments to the pleadings, not a jury trial order, and did not abuse its discretion when it interpreted its scheduling order to be consistent with the deadline that the parties had proposed (as well as the literal text of the order).  *See* 641 F.3d at 1381.

Finally, UEI is incorrect that "[t]he parties' course of conduct was consistent with the court's understanding that the jury's verdict regarding equitable issues was advisory."  Red Br. 27.  As discussed before, the key "course of conduct" evidence is that UEI never renewed its request to bifurcate and instead UEI made the strategic decision to have the jury decide the equitable issues.  *See supra* pp. 9–13; *see also* Blue Br. 19–26.

**D.    Because UEI did not renew its request for bifurcation, and did not object to sending the equitable issues to the jury, UEI is deemed to have consented to a binding jury verdict under Rule 39(c)(2).**

With respect to whether UEI consented to a binding jury verdict under Rule 39(c)(2), the dispositive case is *Modine*, which concluded that "failure to object is treated as consent." 917 F.2d at 542 n.2. UEI does not dispute the holding of *Modine*; instead, UEI argues that the facts of this case show it "objected to having the jury decide the equitable issues" and "UEI consistently maintained that the issues were for the judge." Red Br. 28, 29. But UEI's citations to the record ignore the key fact that after the district court denied bifurcation without prejudice, UEI changed its strategy and decided to pursue a binding jury verdict instead, which is why UEI never renewed its request to bifurcate. *See supra* pp. 9–13.

UEI's attempts to distinguish *Broadnax*, *Bereda*, and *Thompson* also do not withstand scrutiny. *See* Red Br. 30–31. *Broadnax* was not "limited to the facts of that case," but instead followed the line of cases in the Third, Fifth, and Sixth Circuits that resulted in *Bereda*, *Garza*, and *Thompson*, respectively. *See* 415 F.3d at 272 ("We find the reasoning of our sister circuits persuasive."). *Bereda*, *Garza*, and *Thompson* are indistinguishable from the facts here. UEI argues that, unlike those cases, "the district court [in this case] gave the parties ample warning that it understood, long before the verdict, that the verdicts on the equitable defenses were going to be advisory only," Red Br. 31, but tellingly UEI does not provide

-15-

any supporting citation to the record, because the district court never once
mentioned an advisory verdict in more than 2,000 pages of trial transcript or at any
time before trial.  It was not until after the jury returned its verdict that the district
court announced for the first time that the verdict would be advisory, just as in
*Bereda*, *Garza*, and *Thompson*, which all reversed similar district court decisions.

UEI tries to limit the Ninth Circuit's holding in *Pradier* that "[t]he parties
are entitled to know at the outset of the trial whether the decision will be made by
the judge or the jury," 641 F.2d at 811, to the situation where there was a Seventh
Amendment right to have the jury decide.  *See* Red Br. 31–32.  But *Bereda* and
*Thompson* concluded that the rule of *Pradier* applies to equitable issues, too, and in
any event URC has always contended that the legal and equitable issues in this
case are intertwined and thus, under the Seventh Amendment, the jury should
decide the equitable issues.  *See* A21847:4–:14, A31475:21–76:3, A33545:15–:21.

UEI resorts to unpublished, non-precedential opinions to try to explain away
its Rule 50(a) motion during trial — which was a clear admission that UEI wanted
a binding jury verdict, followed by an even clearer admission that if its Rule 50
motion was denied then the equitable issues "ought to go to the jury," *see* Blue Br.
41–42 — but none of the cases UEI cites is relevant to this case, because none
involved a dispute about whether the judge or jury was the trier of fact.  *See* Red
Br. 32–33 (citing *Nester-Osborne v. Albertson's, Inc.*, 212 Fed. App'x 616, 617

(9th Cir. 2006); *Davis v. United States*, No. 07-461, 2009 WL 1455976, at *1 n.2

(D. Haw. May 26, 2009); *United States v. Parker*, No. 07-1969, 2015 WL

1745879, at *4 (S.D. Cal. Feb. 17, 2015); *Commonwealth Capital Corp. v. City of

Tempe*, No. 09-274, 2011 WL 3759475, at *1 (D. Ariz. Aug. 25, 2011); *Levi

Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. 07-3752, 2009 WL

1561432, at *1 (N.D. Cal. June 1, 2009)).

UEI has no explanation for the fact that in the jury instructions, it objected to

the jury deciding the *res judicata* issue, but it never objected to the jury deciding

any other issues, despite extensive filings on the jury instructions and a hearing

that lasted most of the day. *See* Blue Br. 40–41 (citing A23459 n.1). Under

*Modine*, the failure to object to the jury instructions is dispositive. *See* 917 F.2d at

542 & n.2. The cases cited by UEI merely stand for the proposition that an

advisory jury can receive jury instructions, but they do not change the rule of

*Modine* that the jury's verdict will be binding absent an objection. *See* Red Br. 33–

34 (citing *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367,

1375 (Fed. Cir. 2013); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d

1342, 1353 (Fed. Cir. 2012)).

Finally, UEI's discussion of the facts (Red Br. 34–35) again tellingly

overlooks the key fact that UEI never renewed its request to bifurcate. *See supra*

pp. 9–13. The district court's conclusion that "there was no possible upside for the

Plaintiff in having the jury hear the relevant facts," Red Br. 35 (citing A6),

supports URC's position, not UEI's, because it explains why the district court's

ruling at the pretrial conference (which meant the jury would hear the relevant

facts no matter what) caused UEI to prefer a binding jury verdict.  *See supra* pp. 9–

13.

### E.    In the 9th Circuit, a finding of "prejudice" is not required, but in any event, URC was prejudiced.

UEI argues that URC has not shown "prejudice" from the district court's

announcement after the fact that the jury's verdict was advisory.  *See* Red Br. 36–

38.  But in the Ninth Circuit (along with at least the Third, Fifth, and Sixth

Circuits), a finding of "prejudice" is not required, as shown by *Pradier*, *Bereda*,

*Garza*, and *Thompson*.  *See Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 192

n.2 (7th Cir. 1994) (noting apparent Circuit split).  The cases UEI cites are from

outside the Ninth Circuit and are distinguishable because the district courts in those

cases did not wait until *after* the fact to announce that the jury's verdict would be

advisory, as happened here.  *See* Red Br. 36 (citing *Ed Peters*, 215 F.3d at 188 (1st

Cir.); *Merex*, 29 F.3d at 827 (2d Cir.); *Amtrust Inc. v. Larson*, 388 F.3d 594, 598

(8th Cir. 2004) (parties warned before trial the jury could be treated as advisory);

*cf. Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195

F.3d 368, 373–75 (8th Cir. 1999) (error to declare verdict advisory given right to

jury)).

-18-

To the extent prejudice is relevant, it prejudiced URC to give UEI three bites at the apple on the equitable issues: first the option to bifurcate (which UEI waived), then a binding jury verdict (which UEI pursued and lost), and then an advisory verdict (which resulted in the district court overturning the jury's verdicts on three of the equitable issues).

UEI again tries to accuse URC of "tactical shenanigans" (or "gamesmanship"), Red Br. 37, but as explained above, it was *UEI* that shifted positions after the final pretrial conference, *see supra* pp. 9–13.  URC's position has been consistent all along.  UEI contends that after trial URC was "evasive" in response to the district court's questions about what URC believed, *see* Red Br. 37–38, but URC told the truth:  "We thought they would be requesting bifurcation."  A33551:25–53:7, A33562:5–63:13.  The district court did not understand URC's answer at first, A33553:3–:4, but later acknowledged that it understood URC's answer and did not find it evasive:  "Okay.  I got your answer. . . . Mr. Chandler, you did a good job.  I appreciate it."  A33563:10–:13.

## II.   Under the Seventh Amendment, the district court erred in not following the jury's implicit factual determinations with respect to the legal issue of improper inventorship.

With respect to the Seventh Amendment, the premise of UEI's arguments is that so long as there is any conceivable way that the judge's findings of fact on patent misuse and unclean hands might not conflict with findings that the jury

could have made with respect to the legal issue of improper inventorship, then the Seventh Amendment has not been violated.  *See* Red Br. 39–44.  For example, UEI speculates (without pointing to any evidence) that "[t]he jury *could have* found improper inventorship without finding bad faith, improper purpose, or inequitable conduct."  *Id.* at 44 (emphasis added).

UEI turns the law on its head.  When a jury returns a general verdict on an issue, as happened here with respect to the legal issue of improper inventorship, "the district court was required to accept *all* implicit factual findings supporting the jury's conclusion . . . that were supported by substantial evidence."  *Kinetic*, 688 F.3d at 1360 (emphasis added) (discussing general verdict of obviousness); *see also* Blue Br. 51–52 (collecting cases).  As detailed in URC's opening brief, substantial evidence supported the jury's implicit factual findings that UEI asserted the '426 patent in *bad faith*, for an *improper purpose*, while *knowing it was invalid* — all facts "tried by a jury" that the district court "re-examined" in violation of the Seventh Amendment when it issued contrary findings with respect to patent misuse and unclean hands.  *See* Blue Br. 53–59.

The three cases cited by UEI are distinguishable because they concern whether a judge can determine equitable issues *before* a jury decides the legal issues.  *See* Red Br. 39–40 (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (holding that legal claims had to be decided by the jury before the judge

decided the equitable claims, given "common" issues of fact); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211–13 (Fed. Cir. 1987) (holding that inequitable conduct could be decided by the judge before the jury decided invalidity because the judge's findings would not necessarily resolve factual issues "common" with the issue of validity); *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1371–75 (Fed. Cir. 2006) (reaffirming *Gardco*)); *see also Shum v. Intel Corp.*, 499 F.3d 1272, 1276–79 (Fed. Cir. 2007) (distinguishing *Gardco* and holding that judge's decision to determine an inventorship claim before the jury decided a state law fraud claim involving common issues of fact violated the Seventh Amendment).

The cases cited by UEI do not address the question here, which is what happens when the jury does, in fact, decide the legal issues first. The law is clear: When the jury decides the legal issues first, the court is required to conform its findings of fact to the findings that the jury reasonably could have made based on the substantial evidence presented at trial. *See* Blue Br. 51–52 (citing *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 994 (Fed. Cir. 1995); *L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)); *see also Cabinet Vision v. Cabnetware*, 129 F.3d 595, 599–601 (Fed. Cir. 1997) (vacating and remanding).

Finally, UEI's assertion that URC is changing its position from the final

pretrial conference is factually incorrect.  *See* Red Br. 42 ("URC now seeks to

switch positions").  URC argued for a binding jury verdict because the legal and

equitable issues were intertwined, *see* A21847:4–:14, A31475:21–76:3,

A33545:15–:21, but in response to UEI's request for bifurcation, URC argued that

if bifurcation were granted, then the equitable issues should be decided by the

court *before* any jury trial since that could obviate the expense of a jury trial, *see*

A21847:21–48:3, A31474:14–75:4.  URC made clear that bifurcation was *not* what

it wanted:  "MR. KANG:  First of all, to be clear, we don't want — THE COURT:

I understand.  MR. KANG: — phasing or bifurcation. "  A31475:25–76:3.  URC

has not switched positions; it has always argued that under the Seventh

Amendment the jury's findings should govern.

## III.    The district court's exceptional case decision cannot be affirmed based on speculation that the district court might have reached the same result even if it had accepted the jury's verdicts of patent misuse and unclean hands.

In an effort to avoid the merits of URC's appeal, UEI urges this Court to

disregard the district court's errors because the district court somehow could have

exercised its discretion to reach the same result even if it had accepted the jury's

verdicts as binding.  *See* Red Br. 15–19.  That logic is incorrect.  It is well settled

that "[a] district court would necessarily abuse its discretion if it based its ruling on

an erroneous view of the law or on a clearly erroneous assessment of the

evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014).  Where, as here, a district court commits an error of law, it has by definition abused its discretion, and it is for the district court, not this Court, to decide how to exercise that discretion in the first instance by applying the correct law to the facts.

If the district court had accepted the jury's verdict that *all* of the patents were unenforceable due to UEI's unclean hands — a truly remarkable and unusual finding in a patent case — it is difficult to imagine that the court would nevertheless have found the case routine and unexceptional, even in part.  Yet that is what UEI asks this Court to assume with its circular argument that this Court should not even consider whether the district court erroneously disregarded the jury's verdicts because "it would not alter the [district] court's discretionary judgment that UEI's litigating positions and litigation conduct as to those patents were reasonable and not befitting of a fee award under § 285."  Red Br. 18.

UEI's argument contradicts this Court's precedent:  When this Court changes the underpinnings of an exceptional case determination, it remands for the district court to decide in the first instance how to exercise its discretion in light of the correct facts and law, instead of speculating (as UEI asks this Court to do) that the district court might reach the same result regardless of the legal and factual underpinnings of the decision.  *See, e.g., Stryker Corp. v. Zimmer, Inc.*, 782 F.3d

649, 662 (Fed. Cir. 2015) (remanding for reconsideration of decision awarding fees, where underlying determination of willful infringement was reversed, despite possibility that the district court could reach the same result and find the case "exceptional" based on "allegations of litigation misconduct"), *cert. granted*, 136 S. Ct. 356 (U.S. Oct. 19, 2015) (No. 14-1520); *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 769, 774–75 (Fed. Cir. 2014) (remanding for reconsideration of decision denying fees, in light of determination on appeal that the infringement may have been willful, despite the possibility that the district court could reach the same result given its findings that the defendant "had a reasonable belief that its products were non-infringing" and had "made a good faith effort to design around the [p]atent"). This has long been the practice in this Court. *See, e.g.*, *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1423, 1429 (Fed. Cir. 1988) (remanding for reconsideration of decision denying fees, in light of determination on appeal that the infringement was willful, despite finding by the district court that the defendant "reasonably believed that the '805 patent was invalid, and if valid, that their bagging machines did not infringe").

UEI's argument is also contrary to the disposition of *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). In *Octane*, like this case, internal emails suggested an improper motivation for the lawsuit. *See id.* at 1755 n.5. The district court dismissed those emails as "stray comments," found no "bad

faith," and refused to find the case "exceptional" under § 285. *Id.* at 1755 & n.5. On appeal, the Supreme Court altered the legal standard for § 285 and remanded to this Court. This Court, in turn, remanded to the district court, instead of affirming on the theory that the district court could have reached the same result applying the correct law, as UEI argues here. *See ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 Fed. App'x 1002, 1005 (Fed. Cir. Aug. 26, 2014) (per curiam) (remanding "to the district court for application [of § 285] in the first instance"). Notably, the district court then exercised its discretion to find the case "exceptional" based on the totality of the circumstances, notwithstanding its earlier conclusion to the contrary. *See ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 899 (D. Minn. 2015).

UEI relies primarily on this Court's recent decision in *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015). *See* Red Br. 17–19. In that case, the district court issued two *Markman* rulings in favor of the patentee and rejected Newegg's motion for summary judgment of indefiniteness. *See* 793 F.3d at 1346. Surprisingly, however, the patentee voluntarily dismissed its case against Newegg shortly before trial. *Id.* at 1351. Following the dismissal, Newegg moved for attorneys' fees under § 285 arguing that the suit was a nuisance, which the district court denied on the basis that it had "already rejected Newegg's attempts to limit the scope of the patent through claim construction and had denied Newegg's

-25-

motion for summary judgment." *Id.* at 1346.  Newegg did not appeal the

underlying adverse claim construction orders or summary judgment ruling, and

instead appealed only the denial of fees.  *Id.* at 1347.  Not surprisingly, this Court

refused to review the claim construction orders *de novo* given that the only issue

on appeal was whether the district court had abused its discretion in denying fees

under § 285.  *See id.* at 1347–49.  Instead, this Court affirmed the denial of fees

after satisfying itself that "the district court did not abuse its discretion in finding

that [the patentee's successful] claim construction and indefiniteness positions did

not stand out." *Id.* at 1348.

SFA is distinguishable because there was no appeal of the underlying orders

(*e.g.*, the claim construction rulings and the indefiniteness ruling, all of which had

gone against Newegg, the appellant).  *See id.* at 1346–47.  Instead, there was only

an appeal of the decision denying fees under § 285.  *See id*.  In this case, by

contrast, URC is appealing the underlying order taking away the jury's verdict.

*See* A26652.  This Court's decision in *SFA* does not stand for the broad proposition

advanced by UEI that a district court's errors can be ignored because the court

theoretically could have exercised its discretion to reach the same result after

applying the correct facts and law.  Instead, *SFA* stands for the unremarkable

proposition that if a party does not appeal an underlying order, this Court will not

"evaluate and determine all issues of law decided by the district court de novo as

part of our review of the district court's exceptional case determination." 793 F.3d at 1348.

Under *Highmark* and this Court's precedent, if the district court erred when it disregarded the jury's verdict, then this Court should remand for the district court to decide in the first instance whether to find additional aspects of the case exceptional under § 285, and, if so, whether to award additional fees and costs.

## CONCLUSION

The jury's verdicts of laches, equitable estoppel, patent misuse, and unclean hands should be reinstated, and the order partially denying attorneys' fees should be vacated in part to the extent fees were not awarded for the apportioned aspects of the case and, to the extent vacated in part, remanded for further consideration in light of UEI's patent misuse and unclean hands.

Dated:  April 4, 2016                    By: /s/ Peter H. Kang

Constantine L. Trela, Jr.                Peter H. Kang
   <ctrela@sidley.com>                  <pkang@sidley.com>
SIDLEY AUSTIN LLP                        SIDLEY AUSTIN LLP
One South Dearborn Street                1001 Page Mill Road, Bldg. 1
Chicago, Illinois  60603                 Palo Alto, California  94304
Telephone: (312) 853-7000                Telephone: (650) 565-7000

Anna M. Weinberg                         Theodore W. Chandler
   <aweinberg@sidley.com>               <tchandler@sidley.com>
SIDLEY AUSTIN LLP                        SIDLEY AUSTIN LLP
1501 K Street, NW                        555 West Fifth Street, Suite 4000
Washington, DC  20005                    Los Angeles, California  90013
Telephone: (202) 736-8000                Telephone: (213) 896-6000

Teague I. Donahey                        Douglas A. Miro
   <tidonahey@hollandhart.com>          <dmiro@ostrolenk.com>
HOLLAND & HART LLP                       OSTROLENK FABER LLP
800 West Main Street, Suite 1750         1180 Avenue of the Americas, 7th
Boise, Idaho  83702                      Fl.
Telephone: (208) 383-3988                New York, New York  10036
                                         Telephone: (212) 382-0700

                                         *Counsel for Defendant-Appellant*
                                         *Universal Remote Control, Inc.*

## PROOF OF SERVICE

I HEREBY CERTIFY that on the date and in the place shown below, I served the foregoing documents on the persons listed below in the manner indicated below.

| **Person(s) served** | **Manner of service** |
|---|---|
| Gregory A. Castanias<br>    <gcastanias@jonesday.com><br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20001<br>Telephone: (202) 879-3939<br><br>David B. Cochran<br>    <dcochran@jonesday.com><br>Thomas R. Goots<br>    <trgootsjonesday.com><br>Sheryl H. Love<br>    <shlove@jonesday.com><br>JONES DAY<br>901 Lakeside Avenue<br>Cleveland, Ohio  44114<br>Telephone: (216) 586-3939<br><br>Mark A. Finkelstein<br>    <mafinkelstein@jonesday.com><br>Jaclyn B. Stahl<br>    <jstahl@jonesday.com><br>JONES DAY<br>3161 Michelson Drive, Suite 800<br>Irvine, California  92612<br>Telephone: (949) 851-3939<br><br>*Counsel for Universal Electronics, Inc.* | By the Court's CM/ECF system |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 4, 2016.

By: /s/ Peter H. Kang

*Counsel for Defendant-Appellant*
*Universal Remote Control, Inc.*

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because according to the word count function of the word-processing program used to prepare the brief, the brief contains 6,974 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.


Dated:  April 4, 2016                         By:  /s/ Peter H. Kang

                                                *Counsel for Defendant-Appellant*
                                                *Universal Remote Control, Inc.*